Geraldine Kay, Plaintiff-Appellee, v. The Village of Palatine, a Municipal Corporation, Defendant-Appellant.

**Gen. No. 53,908.**

First District.

June 12, 1970.

Littlejohn and Glass, of Chicago (Bradley M. Glass, of counsel), for appellant.

Herbert Lesser, of Chicago (Herbert Lesser and Willard J. Lassers, Elson, Lassers and Wolff, of Chicago, of counsel), for appellee.

STOUDER, J.

Plaintiff-Appellee, Geraldine Kay, brought this action in the Circuit Court of Cook County against the Village of Palatine, Defendant-Appellant. The action sought an accounting and damages with respect to funds received by the Village from special assessments. William Kunkel and Helen Sutton are the owners of special assessment bonds issued by the Village in anticipation of the receipt of proceeds of certain special assessments and will be referred to as the plaintiffs, the named plaintiff being a nominee. The trial court entered judgment in favor of the plaintiffs in the amount of $54,760.52 and it is from such judgment that the Village of Palatine has appealed.

During the years 1922 to 1929, the Village of Palatine issued special assessment bonds payable out of special assessments levied for local improvements. The bonds were payable in yearly installments together with interest over a period of 10 years.

On account of the depression, defaults on the bonds occurred and the bonds which are the subject of this proceeding, were purchased by the present holders in the 1930's and 1940's after default.

The complaint alleges numerous violations of its duties by the Village as Trustee including commingling of funds, etc. The gist of the complaint is that the Village after collecting and receiving payments of the special assessments did not distribute the same according to law in that the Village failed to pay plaintiffs a pro rata amount of such collections.

Each party employed an auditor who independently audited the special assessment records of the defendant Village. Each auditor reached substantially the same conclusion concerning the amounts collected by the Village and not distributed to the plaintiffs, the only difference being that plaintiffs' auditor claimed approximately $3,000 more was due on account of payments received before the maturity of the bonds. The trial court rejected

plaintiffs' claim for the extra amount and the judgment represents an amount based on the stipulation of the parties as to the amount due at the time the audit was made.

From the testimony of the Village auditor it appears that there were practically no special assessment records available for the period prior to 1934. Subsequent to 1934 but prior to 1960, Village records were inadequate and incomplete. Subsequent to 1960, the records of the Village were complete. Of the amount stipulated to having been collected but not distributed approximately $10,000 was on hand, the remainder, including interest and penalties, was collected but was neither on hand nor distributed to plaintiffs.

As revealed by audits the Village admitted that it had failed to pay over to the bondholders ratably the amounts collected from the special assessments and that such failure was contrary to law. The only defense raised by the Village in the Trial Court and on this appeal is the defense of laches. The testimony on this issue is largely undisputed.

Kunkel and Sutton were real estate brokers also engaged in the business of buying special assessment bonds. Each owned bonds in the estimated total amount of one half million to one million dollars. Each owned special assessment bonds of twenty to twenty five municipalities in northern Illinois and Indiana.

According to the testimony of Ahbe, agent for Kunkel as corroborated by Margaret Godknecht, Palatine Village Treasurer from 1934 to 1956, the bondholders or their agents made more or less regular annual inquiries concerning payments received by the Village Treasurer. Either the bonds themselves, or a list thereof were brought to the Village Treasurer and inquiries were made concerning what funds had been collected. If funds were available payment would be made to the bondholder. As shown by the audits only a portion of the funds to which the bondholder was entitled was paid. Amounts

311

were collected and improperly distributed during the 1930's, 1940's and 1950's.

According to Ahbe, he saw an undated letter in 1964 in which the Village in return for surrender and cancellation of the special assessment bonds, offered to pay such bondholder the amount collected for such bond or 10 per cent of the principal. The letter mentioned that if the amount in the special assessment fund was insufficient to pay the amount collected, the difference would be made up from the general fund. Ahbe discussed the proposed settlement with the then Village Treasurer in 1964 but declined to accept the approximate $9,500 which the Village claimed it had collected for the Kunkel bonds in full settlement thereof. As a consequence the letter was turned over to an attorney and the audit which revealed the Village's improper distribution of special assessment funds was undertaken.

The trial court found that plaintiffs were not guilty of laches barring their rights to recover. It is this conclusion which defendant argues is erroneous as a matter of law. To the extent that the judgment includes approximately $10,000 which the defendant had in its possession at the time suit was instituted it is conceded by defendant that plaintiffs are entitled to such sum.

■ It is well settled that a municipality is by statute a trustee with respect to the levy, collection and disbursement of special assessment funds. Rothschild v. Village of Calumet Park, 350 Ill 330, 183 NE 337. In the case at bar it is admitted by the defendant Village that it collected funds which ought to have been paid over to plaintiffs and that in violation of its duty, distribution was not made as required. As indicated above, the auditor for plaintiffs and the auditor for defendant are in agreement concerning the amounts collected, disbursed and not disbursed.

■ The equitable doctrine of laches refers to the lapse of time accompanied by other facts and circum-

stances which makes the enforcement of the claim inequitable. Piff v. Berresheim, 405 Ill 617, 92 NE2d 113. Defendant relies principally on Whitaker Co. v. City of Carbondale, 55 F Supp 72 (SD Ill) in support of its argument that laches precludes plaintiffs' recovery in the case at bar.

In Whitaker, the court held that plaintiff bondholder was barred from recovery for three reasons. First, the municipality had unconditionally repudiated its liability more than 14 years before the suit was filed, second, more than 20 years had elapsed since the municipality had made any payments on the bonds and third, either the plaintiff or his predecessor had actual knowledge of the defaults complained of more than 25 years prior to the commencement of the action. Since none of these circumstances exist in the case at bar, the Whitaker case, in its general reasoning, supports the action of the trial court rather than a contrary view. In the case at bar the Trustee Village did not repudiate its obligation at any time. It continued making payments until shortly before this action was filed and plaintiffs are not charged with actual notice of the defaults complained of.

Defendant insists that plaintiffs are guilty of laches because they failed to exercise due diligence to discover the Village's breach of trust and also that the Village ought not to be compelled to pay such claims at such a late date because of undue hardship.

■■ As can be seen from the foregoing facts, defendant argues that because the bondholders were "professional" or "sophisticated" their failure to discover the Village's breach of trust was the result of their failure to exercise due diligence. We find no merit to this contention.

It is axiomatic that the Village as Trustee had a duty of fidelity toward its bondholder beneficiaries. They were not parties dealing at arms length but on the contrary the beneficiary was entitled to and did repose trust

313

and confidence in the Village. The beneficiary bondholders were not required to be distrustful or suspicious of the conduct of the Village Treasurer absent circumstances which would have warranted a reasonable suspicion that the Trustee might not have been fulfilling its duties. From the foregoing facts it does not appear that there was anything suggesting misconduct by the Trustee which ought to have been investigated. The Trustee made more or less regular payments to the bondholders. Nothing in the manner of payment or the amount thereof suggested any reason for the bondholders to become suspicious. The evidence indicates not only that other special assessment bondholders of the Village of Palatine acted as did the plaintiffs but also that plaintiffs serviced their Palatine bonds in the same manner as they serviced their bonds with other municipalities. In this connection it should be observed that defendant has wholly failed to offer any evidence as to any time when its defaults should have become known to plaintiffs.

■ Special reference has been directed to the fact that Lawrence Sutton, who died in 1959, had two or three years prior to his death, filed suit against the Village of Palatine with respect to other special assessment bonds not the subject of this proceeding. His widow was questioned concerning this action and she indicated that she knew some proceeding had been filed and that it had been settled. According to her testimony the bonds included in the present action were apparently in the possession of a bondholders' protective committee and their whereabouts were unknown to her until after her husband's death. The defendant asserts that Mrs. Sutton is precluded from recovery on her bonds because of her deceased husband's knowledge of the Village's defaults. Such an assertion might be valid if supported by the evidence. However, so far as the record discloses the only reference to the prior suit is the fact that it was filed

314

with respect to other special assessment bonds and settled. The basis for the action is not shown in the record and there is no indication that the action was based on the Village's failure to ratably distribute special assessment funds. Accordingly such assertion is beyond the record.

■ We likewise find no merit to the Village's contention that recompense for its breach of trust ought to be denied because of hardship. So far as the record is concerned, the breach of duty of the Village is clearly established and the obligation to respond in damages as a consequence thereof is no more of a hardship than any other obligation to respond in damages.

Finding no error in the judgment of the Circuit Court of Cook County, judgment is affirmed.

Judgment affirmed.

RYAN, P. J. and ALLOY, J., concur.