**HOUSTON NORTH HOSPITAL PROPERTIES, et al., Plaintiffs-Appellants,**

v.

**TELCO LEASING, INC., et al., Defendants-Appellees.**

No. 81-2343.

United States Court of Appeals, Fifth Circuit.

July 6, 1982.

Opinion on Denial of Rehearing Oct. 7, 1982.

See 688 F.2d 408.

Butler, Binion, Rice, Cook & Knapp, Don Fogel, Norman Riedmueller, Houston, Tex., for plaintiffs-appellants.

Susman & McGowan, Stephen D. Susman, Franci N. Beck, Houston, Tex., for defendants-appellees.

Before RUBIN, REAVLEY and TATE, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

▮ Peers who deal at arm's length with each other may strike a hard bargain so long as it is not an unconscionable one. Here, a business debtor seeks to set aside an agreement entered into with its creditor whereby the creditor agreed, for a price, to accept prepayment of a loan and release the lien securing it. The debtor argues that it had no economic choice but to acquiesce in the creditor's demands and was, therefore, the victim of economic duress entitling it to recover damages. The district court found that the threat of economic burden to a debtor, not otherwise wrongful, did not constitute economic duress and rendered summary judgment for the creditor. We affirm.

The facts are not in dispute. Houston North Hospital Properties ("Houston") had made two loans from Telco Leasing, Inc., ("Telco") for use in purchasing medical equipment for its hospital. Telco retained security interests in the equipment so purchased. Later, to accommodate other Houston creditors, Telco agreed to the subordination of its interest in the equipment securing the second loan in exchange for a second lien deed of trust on the hospital's real property.

Several years later, in 1976, Houston embarked upon a major hospital improvement program. By early 1978, it had obtained a loan commitment from another lending corporation, not a party to this suit, for a hospital improvement loan in the amount of $10.6 million. As a condition to making this loan, the new lender required that all real property liens of the type held by Telco be extinguished by the scheduled date of closing in late June 1978. Through error or oversight, however, Houston did not begin negotiations with Telco to meet this requirement until several days before the deadline. At a hastily called meeting held in Chicago, Illinois, Houston offered to pay the outstanding balances on both loans owed to Telco (though Houston had no contractual right of prepayment under either loan agreement) in exchange for a release of the critical second lien. Telco refused this offer and instead informed Houston that it (Houston) was in default on both of those loans [1] and that Telco would release

---

1. The defaults consisted of Houston's failure to supply Telco with periodic financial statements and its failure to offer Telco a right of first

the lien only in return for full payment of both loans, approximately $797,000, plus approximately $160,000. Assertedly because it had "no other choice," Houston consented to these terms. A document reflecting this agreement ("1978 agreement") was executed in Chicago and payment was made there.

Houston subsequently filed suit against Telco,[2] contending that the $160,000 constituted exorbitant interest and that both the original loans and the 1978 agreement violated the usury laws of Texas. Houston also contended that the 1978 agreement was a product of "extortion and duress" and sought compensatory and exemplary damages. Telco moved for summary judgment. On Houston's usury claims, the district court ruled that Illinois law applied and that, under that law, the interest charged Houston on the various loans was not usurious. On the economic duress claim, the court found it unnecessary to choose between Texas and Illinois law, for it found that, under either, Telco's actions did not amount to economic duress. Accordingly, the district court granted summary judgment for Telco. Houston appeals only the ruling on its claim of economic duress.

We consider first whether Illinois or Texas law applied to Houston's economic duress claim. In a diversity case, a federal district court must apply the choice-of-law principles of the state in which it sits to resolve a threshold conflicts question. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Teas v. Kimball*, 257 F.2d 817, 823 (5th Cir. 1958). In this case, Texas choice-of-law rules require the application of Illinois substantive law to Houston's economic duress claim for Texas courts adhere in most circumstances to the traditional tort conflicts rules in applying the law of the place of the tort or wrong (the *lex loci delicti*). *Tucker v. Texas Co.*, 203 F.2d 918, 920 (5th Cir. 1953) (applying Texas law).[3] The place of the tort is usually described as the "place of injury" or the place "where the last event necessary to make an actor liable for an alleged tort took place." *Seguros Tepeyac, S.A. v. Bostrom*, 347 F.2d 168, 175 (5th Cir. 1965) (applying Texas law); *Hearne v. Dow-Badische Chemical Co.*, 224 F.Supp. 90, 96 (S.D. Tex.1963) (same). Whether the "last event necessary" here was the payment of money, as Telco urges, or Telco's insistence on its own terms for the 1978 agreement, Illinois law applies because both events occurred in Chicago.

■ Like many other states, Illinois recognizes the tort of "economic duress." In Illinois, duress is defined as including the "imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress of another, whereby his free agency is overcome." *Higgins v. Brunswick Corp.*, 76 Ill.App.3d 273, 277, 32 Ill.Dec. 134, 137, 395 N.E.2d 81, 85 (1979) (citing, *inter alia, Stavins v. Stavins*, 70 Ill.App.3d 622, 26 Ill.Dec. 927, 388 N.E.2d 928 (1979); *Pittsburgh Steel Co. v. Hollingshead & Blei*, 202 Ill.App. 177 (1916)). To invalidate an agreement on the basis of duress, a party must show that he was induced by a "wrongful" act or threat of another "to execute an agreement under circumstances which deprived him of the exercise of his free will." *Higgins, supra,* 76 Ill.App.3d at 277, 32 Ill.Dec. at 137, 395 N.E.2d at 85 (citing *Kaplan v. Kaplan*, 25 Ill.2d 181, 182 N.E.2d 706 (1962); *Kaplan v. Keith*, 60 Ill.App.3d 804, 18 Ill.Dec. 126, 377 N.E.2d 279 (1978)). Though "wrongful"

refusal on its real estate financing. Telco did *not*, however, exercise its contractual right to "accelerate" the loans, as Houston belatedly and erroneously argues here. We discuss the effect of this below. *See* note 5 *infra*.

**2.** Houston originally brought suit in Texas state court, but Telco removed it to federal court pursuant to 28 U.S.C. § 1441.

**3.** More recently, this court has suggested that the modern "most significant relationship" test might appropriately be used. *Seguros Tepeyac, S.A. v. Bostrom*, 347 F.2d 168, 175–76 (5th Cir. 1965) (applying Texas law). Since the 1978 agreement was negotiated, executed, and consummated in Chicago, Illinois bears the most significant relationship to the underlying transaction.

acts are not limited to ones that are "criminal, tortious or in violation of a contractual duty, but extend to acts that are wrongful in a moral sense," *Kaplan v. Kaplan, supra,* 25 Ill.2d at 185–86, 182 N.E.2d at 709, there is no duress when consent to an agreement "is secured because of hard bargaining positions or the pressure of financial circumstances." *Higgins, supra,* 76 Ill.App.3d at 277, 32 Ill.Dec. at 137, 395 N.E.2d at 85 (citing *Chouinard v. Chouinard,* 568 F.2d 430 (5th Cir. 1978)).

As a matter of federal procedural law, the granting of summary judgment under Fed.R.Civ.P. 56 is appropriate when, viewed in light most favorable to the opposing party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *United States v. R & D One Stop Records, Inc.,* 661 F.2d 433, 435–36 (5th Cir. 1981). While the question of economic duress is considered to be one of "fact" under Illinois law, "to be judged in light of all the circumstances surrounding a given transaction," *Schlossberg v. E. L. Trendel & Associates,* 63 Ill. App.3d 939, 943, 20 Ill.Dec. 741, 744, 380 N.E.2d 950, 953 (1978), a federal district court may nevertheless grant summary judgment on such an issue, in a non-jury case,[4] if the "*evidentiary* facts are not dis-

puted ... [and] trial would not enhance [the court's] ability to draw inferences and conclusions," *Nunez v. Superior Oil Co.,* 572 F.2d 1119, 1124 (5th Cir. 1978) (emphasis added).

By these standards, Telco did not commit economic duress and the court below appropriately granted summary judgment. Telco's conduct was not wrongful.[5] Moreover, Houston exercised its free will in signing the 1978 agreement. Telco was not obligated to acquiesce in Houston's belated demand that Houston be permitted to pay off the money due in exchange for Telco's release of the second lien. Houston's representatives admitted that Telco had no obligation to release the second lien.

The original loan agreements, as correctly interpreted by the district court, did not require Telco to accept prepayment. When Houston approached Telco about a modification of those agreements, it was not wrongful for Telco to seek an agreement on its own terms. Indeed, Telco would have been within its contractual rights had it refused to release the second lien on any terms whatsoever.[6]

It has neither been shown nor claimed that Telco acted unconscionably. Having a good investment that did not require acceptance of prepayment, it could use mar-

---

4. No Rule 38(b) request for a jury trial, *see* Fed.R.Civ.P. 38(b), appears in the record.

5. Houston argues here for the first time that, in addition to declaring Houston in default on its loans at the Chicago meeting, Telco also "accelerated" the amounts due. Therefore, the argument continues, it was "wrongful" of Telco to refuse to release the lien upon Houston's offer to pay the "accelerated" amounts. In fact, however, while Telco did declare Houston in default, it never "accelerated" the loans, though it had the contractual option to do so. Houston argued below that it was wrongful for Telco to demand the entire amounts due under both loans (plus the additional $160,000) because the loan agreements stipulated that in the event of Telco's acceleration of the loans upon Houston's default, Houston was entitled to an eight percent discount. In language we find relevant to the specific argument being raised here, the district court stated,

    Houston's argument that it has an absolute right to an eight percent discount under [the loan agreements] is an attempt to convert the

remedial options of the [lender] upon default into a *right* of prepayment on the part of the *defaulting* party. That is an odd reading of the contracts.

District Court's August 3, 1981, Memorandum and Order, at 9–10 (emphasis in original). Now Houston argues, with no support whatsoever in the record, that Telco did in fact exercise its option to accelerate the loans. That simply did not occur.

6. *Accord, Hamilton v. Kentucky Title Sav. Bank & Trust Co.,* 159 Ky. 680, 167 S.W. 898 (1914). There, the debt was not due and the plaintiff debtor had no right of prepayment. The plaintiff paid an amount in excess of that owed the defendant in order to discharge the defendant's mortgage loan and obtain a new loan from a third party at a lower interest rate. In denying recovery, the court emphasized that it "was not unlawful for the [defendant] to insist upon carrying the debt until maturity or demand a cash consideration for surrendering this right." 159 Ky. at 686, 167 S.W. at 900.

ket tactics to exact a profit. Our entrepreneurial economic system does not exact moral scruples in deals between parties of equal bargaining power.

For these reasons, the judgment is AFFIRMED.