**RESOLUTION TRUST CORPORATION, as Receiver for Peoples Savings and Loan Association, F.A., Plaintiff and Counterdefendant,**

v.

**Angelo RUGGIERO, et al., Defendants and Counterplaintiffs.**

No. 90 C 4054.

United States District Court, N.D. Illinois, E.D.

Jan. 29, 1991.

---

David L. Hazan, William J. Raleigh, De-Haan & Richter, Chicago, Ill., for plaintiff and counterdefendant.

Gary P. Hollander, Robert K. Scott, Bixby, Lehner & Potratz, Chicago, Ill., for defendants and counterplaintiffs.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Resolution Trust Corporation ("RTC"), as receiver for now-defunct Peoples Savings and Loan Association, F.A. ("Peoples Savings"),[1] sues Angelo Ruggiero ("Ruggiero") and a number of other defendants in a mortgage foreclosure action that includes a personal claim against Ruggiero for breach of contract on a $200,000 promissory note (the "Note"). Because RTC has Ruggiero dead to rights on the Note, Ruggiero and his related defendants (collectively "Ruggiero Defendants") have resorted to claimed Affirmative Defenses ("ADs") in an effort to avoid liability.[2]

This opinion will first address Ruggiero's effort to claim economic duress in his hav-

---

1. Peoples Savings is the successor in interest to Peoples Bank for Savings ("Peoples Bank"), a savings and loan association that had been taken over in mid-1989 by Federal Savings and Loan Insurance Corporation ("FSLIC")—itself the predecessor to RTC. In the interest of simplicity this opinion will refer only to RTC. However, this opinion *will* refer to Peoples Bank as the entity involved in the transaction with Ruggiero that is at issue here.

2. This is the second essay of Ruggiero Defendants along those lines. Their initial set of ADs was stricken by this Court as part of its September 6, 1990 memorandum opinion and order that dismissed the Answer that had included those ADs.

ing initialed changes on December 30, 1988 (at the time that he received the $200,000 proceeds of the Note now sued upon) that modified his December 29 transmittal letter to Peoples Bank. Ruggiero had signed a Loan Application for the $200,000 loan on December 28, but he had then included some provisions in his December 29 transmittal letter that were inconsistent with the form of Note provided for his signature at the closing on December 30. Peoples Bank required a deletion from the letter to eliminate such inconsistencies, and Ruggiero initialed that deletion in conjunction with his delivery of the Note to Peoples Bank and his receipt of the $200,000 in loan proceeds.

Any such claim of duress must be viewed with considerable skepticism—Ruggiero, who is himself a lawyer and who originally served as defendants' lawyer in this lawsuit, never said a *word* about any such asserted duress all through the time that he filed the initial ADs and Counterclaim in this action.[3] Whether characterized as some sort of hypnotic effect or as a lesser overbearing of Ruggiero's free will, the now-asserted economic duress must have been powerful medicine indeed to have persisted so that Ruggiero was unable even to talk about it until some 20 months later, when the second set of ADs was filed. To be quite blunt, the entire matter creates the strongly suspicious inference that Ruggiero (or the lawyer who has supplanted him as defense counsel here) is now asserting whatever seems necessary to escape from what Ruggiero himself did at the loan closing.[4]

But be that as it may, any such doubts (however serious or well-taken) as to Ruggiero's credibility should not be permitted to control on a motion such as RTC's, directed as it is to defendants' *pleadings*. Ruggiero's statements in that respect are to be taken at face value on RTC's motion to strike. And here is what AD ¶ 14 says:

> Each demanded change to the loan documents made on December 30, 1988, was acquiesced to by Angelo Ruggiero because:
>
> a. It would have been impossible to obtain a $200,000 loan from a different source prior to the end of calendar year 1988; and
>
> b. Angelo Ruggiero and Gina Ruggiero were faced with the imminent loss of the property had he not initialled the changes as demanded by Mr. Schnure.

█ It has not been conclusively resolved in the few decided cases on the issue (1) whether a defense of economic duress negates the requisite contract-formative intent, so that neither 12 U.S.C. § 1823(e) ("Section 1823(e)") nor the doctrine initially articulated in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) can ever come into play to begin with (see, e.g., this Court's opinion in *FDIC v. Linn*, 671 F.Supp. 547, 556–57 (N.D.Ill. 1987); cf. *FDIC v. Morley*, 867 F.2d 1381, 1385 n. 5 (11th Cir.1989)) or (2) whether duress—like other defenses based on matters outside of the operative documents—is rendered ineffective as a potential defense in the face of RTC's special holder-in-due-course status (see *Oliver v. RTC*, 747

---

**3.** That pleading was filed August 30, 1990—fully *20* months after the closing of the $200,000 loan and 14 months after Peoples Bank had filed its Complaint in the state court to collect on the Note (RTC removed the case to this District Court just under 13 months after the filing of the state court Complaint). It was not until November 23, 1990—after Ruggiero Defendants and the counsel who had by then appeared on their behalf were aware of this Court's tentative views on the problems that they faced on the other ADs that they had previously asserted—that Ruggiero Defendants suddenly "discovered" that Ruggiero had been deprived of his free will when he collected the $200,000 in loan proceeds.

**4.** It is worth noting that RTC has served its Int. 4 on Ruggiero, asking for an identification of "each occasion and the persons present or the recipients of the communication(s), wherein Angelo Ruggiero has voiced or communicated his position that he was somehow forced to acquiesce to Peoples Bank's demands to initial the cross-outs on his letter." Ruggiero has answered "nobody"—or to be precise, he says that he "does not recall telling any other person that he was somehow forced to acquiesce to Peoples Bank's demands to initial the cross-outs on his letter."

F.Supp. 1351, 1353, 1356 (E.D.Mo.1990), which seems to suggest that result—though the opinion goes on (*id.* at 1356) to discuss duress as a potential defense and to negate its existence on the facts in the case). In that respect this opinion will adhere to the view earlier expressed by this Court in *Linn*.[5]

■ Even on that assumption, what Ruggiero sets out here does not satisfy the standard of legal duress. That concept is not a generalized proposition that somehow "necessitous men are not free men." Instead the party raising it as a defense to a suit on a note must show that the other party's demand was somehow unlawful, as explained in *Alexander v. Standard Oil Co.*, 97 Ill.App.3d 809, 814–15, 53 Ill.Dec. 194, 198, 423 N.E.2d 578, 582 (5th Dist. 1981) (citations omitted):

> Economic duress is present where one is induced by a wrongful act of another to make a contract under circumstances which deprive him of the exercise of free will, and a contract executed under duress is voidable. To establish duress, one must demonstrate that the threat has left the individual "bereft of the quality of mind essential to the making of a contract."

As *Higgins v. Brunswick Corp.*, 76 Ill. App.3d 273, 278, 32 Ill.Dec. 134, 138, 395 N.E.2d 81, 85 (1st Dist.1979) (citations omitted) has put it after expressing the same "wrongful act" concept:

> Duress does not exist merely where consent to an agreement is secured because of hard bargaining positions or the presence of financial circumstances. In cases where agreements have been invalidated because of duress, the conduct of the party obtaining the advantage is tainted with some degree of fraud or wrongdoing.

■ Ruggiero Mem. 2 says (but does not explain why) he had "the necessity to obtain funds during calendar year 1988." But even if that were so, that was *his* problem as borrower, not that of Peoples Bank as lender. Ruggiero's needs did not entitle him, as a matter of right, to obtain money on his own terms rather than his lender's. Nothing in the law of economic duress entitles Ruggiero to have obtained money by assuaging his lender's concerns (making the documentary revisions that acceded to the lender's terms), and now to profess to have done so with a figurative gun at his head and to attempt to keep the lender's money because of such alleged "duress."[6] Accordingly AD ¶ 14 is insufficient in law and is stricken.

All the ADs other than the one urging economic duress can be dispatched in the same short order. Each of them succumbs to the congressional will as expressed in Section 1823(e) and to the similar judicial gloss provided by *D'Oench, Duhme* and its progeny.

■ Both Section 1823(e) and the *D'Oench Duhme* doctrine limit the defenses potentially available against RTC (or any potential claims against RTC) by a borrower from a failed financial institution to matters that were set out in the written records of that institution as having been approved by its Board of Directors. But these are the only relevant documents in the Peoples Bank records, apart from the Note now in suit:

---

**5.** In this Court's view the decision in *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987)—handed down just two months after this Court had decided *Linn*—is in full accord with *Linn*'s earlier analysis. *Langley, id.* 484 U.S. at 93–94, 108 S.Ct. at 402 (citations omitted) confirms "that the real defense of fraud in the factum—that is, the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents ... would take the instrument out of § 1823(e), because it would render the instrument entirely void ... thus leaving no 'right, title or interest' that could be 'diminish[ed] or defeat[ed].'" Duress that truly deprives a person of the volition required to enter into a valid and binding contract seems closer to that concept of invalidity (no "meeting of the minds" because there is no "mind"?) than to the voidability implicated by "fraud in the inducement" (*Langley, id.* at 94, 108 S.Ct. at 402). In that respect the Illinois case law defining such duress (quoted in the next paragraph) is wholly persuasive.

**6.** *FSLIC v. Ziegler*, 680 F.Supp. 235, 237–38 (E.D. La.1988) reached the identical conclusion, rejecting a claimed duress defense, on very similar facts.

1. With respect to the Note transaction itself, the records included Ruggiero's December 29, 1988 forwarding letter to Peoples Bank, which had originally contained some restrictive language but from which that language was stricken and initialled by Ruggiero and the Peoples Bank president on December 30.

2. With respect to the other possible transaction that Ruggiero now claims impairs RTC's ability to collect on the Note, the Bank's records comprised:

(a) Peoples Bank's November 17, 1988 minutes, which in part approved a loan to Ruggiero and his wife "subject to terms and conditions";

(b) Peoples Bank's November 17, 1988 loan memorandum, signed by its Directors, which approved that loan to Ruggiero and his wife "under the terms and conditions as outlined herein," which were in turn stated this way in the memorandum:

> Approval, contingent upon satisfactory appraisal, normal terms and conditions, standard documentation, inspection of the property, and receipt of all required information.

and

(c) Peoples Bank's November 18, 1988 six-page loan commitment addressed to Ruggiero and his wife, which set out a detailed set of terms and conditions, including the following:

> Peoples reserves the right to cancel this Commitment and terminate its obligations hereunder at any time upon the occurrence of any of the following events:
>
> \*  \*  \*  \*  \*  \*
>
> j. The failure of this loan to close for whatever reason on or before December 31, 1988.

and concluded with this paragraph:

> The acceptance of this Commitment shall be indicated by your signature on the enclosed copy, which must be received by Peoples by December 2, 1988

or this Commitment shall be null and void.[7]

3. These minutes were among the Peoples Bank records and contained references to that other possible transaction:

(a) In unexecuted form, there was found among the Bank's papers a three-page set of its Board of Directors minutes dated January 19, 1989, with this first page legend:

> *Amendments made at 2/14/89 Board of Directors Meeting

and with this paragraph on Page 2:

> John Schnure presented a modification to the loan request to Angelo Ruggerio which had been approved at the November 17, 1988 meeting. This loan was in participation with National Republic Bank, and the modifications include: 1) interest rate to be increased from 12% to 13%; and 2) the participation by Peoples of up to $800,000 be on a pro rata basis. On a motion by David Gotch, seconded by Richard Sabol and carried, the loan modifications were approved.

and with some *-marked changes contained in the body of the minutes.

(b) Actual Board of Directors minutes included, in executed form, Page 1 and Page 3 of the January 19, 1989 Board of Directors minutes, which were identical to the corresponding pages in the just-mentioned unexecuted set but with no *-marked changes.

(c) Finally, the executed Peoples Bank Board of Directors minutes included those dated February 14, 1989, which contained the following provision:

> The minutes of the regular meeting held on January 19, 1989 were read and reviewed. It was decided that the minutes should be amended as follows:
>
> \*  \*  \*  \*  \*  \*
>
> Regarding the loan to Angelo Ruggerio, it was noted that Mr. Ruggerio had not accepted the association's commitment. Mr. Altman is to advise Mr. Bank.

---

**7.** [Footnote by this Court]  No acceptance of that commitment was *ever* delivered to Peoples

Ruggerio that the commitment will not be renewed or extended.

Ruggiero simply cannot make any mileage out of those documents to escape liability on the Note. As has already been stated in dealing with his duress defense, he himself acceded to the elimination of any contemporaneous limitations on the Note's enforceability when he agreed to the striking out of conditions that he had initially sought to include in his December 29, 1988 forwarding letter. As for the other loan transaction that he now tries to link up with the Note, the Peoples Bank documents reflect a commitment that Ruggiero *never* accepted. And even if the most favorable pro-Ruggiero assumption were to be made—an assumption that the missing second page of the signed January 19, 1989 minutes had contained the same provision about that commitment as the unexecuted version referred to in numbered paragraph 3(a)—the February 14, 1989 minutes reconfirm the fact of Peoples Bank's nonacceptance (and hence the total ineffectiveness) of that other potential transaction.

 *Langley,* 484 U.S. at 90–92, 108 S.Ct. at 400–01 teaches as to Section 1823(e), and a host of cases teach as the *D'Oench, Duhme* doctrine (see, e.g., the particularly expressive exegesis in *Bowen v. FDIC,* 915 F.2d 1013, 1015–17 (5th Cir. 1990) and a much briefer accord from our own Court of Appeals, *FDIC v. State Bank of Virden,* 893 F.2d 139, 143 (7th Cir.1990)), that their key purpose is to ensure that bank regulators (including takeover government agencies such as RTC) can comfortably rely on the regulated financial institution's official records. In this instance an examination of those Peoples Bank records discloses Ruggiero's unsuccessful effort to link the $200,000 with other projected financing by his December 29 forwarding letter—an effort that was scotched by the crossing out of that language, specifically *agreed* to by Ruggiero—together with the wholly consistent trail in the Board of Directors minutes, reflecting another potential loan that never ripened into a binding commitment by Peoples Bank because it was never accepted by Ruggiero. That scenario is a classic one for the defeat of the borrower's claims (among the many similar cases to that effect, see *Bell & Murphy & Associates, Inc. v. Interfirst Bank Gateway, N.A.,* 894 F.2d 750, 753–54 (5th Cir.1990)).

In sum, Ruggiero signed an unconditional Note for $200,000 in exchange for the payment to him of that amount by Peoples Bank. Neither his putative economic duress defense nor any other affirmative defense that he and his codefendants have advanced is available to escape liability on the Note. All the ADs asserted by Ruggiero Defendants are therefore stricken as insufficient in law.