941 F.2d 1213
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 RESOLUTION TRUST CORPORATION, as Receiver for Sun County
Savings Bank of New Mexico, F.S.B., a federally
chartered savings bank, Plaintiff-Appellee,
v.
LIBERTY HOMES, INC., a New Mexico corporation, et al.,
Manuel A. Ferran, Ph.D. Court appointed Independent Receiver
for Continental Mortgage Exchange Inc., a New Mexico
Corporation, Guaranteed Equities, Inc., a New Mexico
corporation, the City of Albuquerque, a municipal
corporation, Grace Andrade, Fred Andrade, Carl Bruce
Sanchez, State of New Mexico Taxation and Revenue
Department, Defendants,
and
Samuel Andrade, Defendant-Appellant.
 No. 90-2255.
 United States Court of Appeals, Tenth Circuit.
 Aug. 23, 1991.
 
 Before LOGAN, JOHN P. MOORE, and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Defendant-appellant Samuel Andrade (Andrade) appeals the district court's grant of summary judgment and decree of foreclosure to plaintiff-appellee Resolution Trust Corporation (RTC) in its capacity as receiver for Sun Country Savings Bank of New Mexico (Sun Country).[1] Specifically, Andrade appeals (1) the district court's order of February 12, 1990, granting RTC's motion for summary judgment as to Andrade's defenses and counterclaims; and (2) the district court's order of October 11, 1990, incorporating by reference the state court's grant of summary judgment to Sun Country regarding liability on the promissory notes, and the district court's grant of RTC's motion for summary judgment as to damages. We affirm in part and reverse in part.
 
 
 3
 This action was originally initiated by Sun Country on December 2, 1985, in two separate state actions (subsequently consolidated) as complaints for foreclosure of mortgages and collection of promissory notes against Andrade and the additional defendants. Andrade filed a timely answer asserting defenses of estoppel, latches, fraud, duress, and lack of consideration. On September 17, 1987, Andrade moved to amend his answer to include counterclaims of breach of contract, breach of covenant of good faith and fair dealing, fraud, misrepresentation, economic duress and compulsion, and intentional interference with business relations. On April 3, 1989, the state court entered partial summary judgment in favor of Sun Country on the issue of the defendants' liability on the notes. The court denied Sun Country's motion for summary judgment on the issue of damages and on defendants' counterclaims.
 
 
 4
 On April 7, 1989, the Federal Savings and Loan Insuarnce Corporation (FSLIC), as conservator for Sun Country, removed the action to the United States District Court for the District of New Mexico. On February 12, 1990, the district court granted plaintiff's motion for summary judgment as to defendants' defenses and counterclaims. On May 1, 1990, the court entered an order striking Andrade's jury demand. On August 30, 1990, RTC was named as receiver for Sun Country and was substituted as plaintiff in the action. On September 14, 1990, the court heard arguments on RTC's motion for summary judgment as to damages and on October 11, 1990, granted summary judgment and entered decrees of foreclosure against Andrade and the other defendants.
 
 
 5
 We review a grant of summary judgment de novo applying the same standard applied by the district court, Fed.R.Civ.P. 56(c). Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir.1990). Summary judgment should be granted only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, the nonmoving party may not rely solely on his pleadings, but must provide specific facts to support a conclusion that genuine issues exist. Abercrombie v. City of Catoosa, 896 F.2d at 1230 (citation omitted). The Supreme Court has held that in order to defeat a motion for summary judgment, "the nonmoving party [must] go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56(e)). The record in this case is voluminous and Andrade's brief does not provide us with much guidance as to his specific contentions of error. Although "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," Hall v. Bellmon, 935 F.2d 1106, 1110, (10th Cir.1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)), we are not obligated to fashion appellant's arguments for him. See National Commodity & Barter Ass'n v. Gibbs, 886 F.2d 1240, 1244 (10th Cir.1989).
 
 
 6
 Andrade appeals the New Mexico state court's grant of partial summary judgment as to his liability on the notes, which was incorporated by reference into the district court's grant of summary judgment as to damages and decree of foreclosure on October 11, 1990. Andrade, in his May 30, 1989, response to RTC's motion for summary judgment, appears to confess his liability on the notes. R.Vol. II, Tab 42 at 11-12; see Federal Deposit Ins. Corp. v. Van Laanen, 769 F.2d 666, 667 (10th Cir.1985) (defendant estopped from denying liability on agreement which was valid and enforceable on its face).
 
 
 7
 When the district court entered its decree of foreclosure in this matter, it granted Andrade only one month in which to redeem. The record on appeal is void of any indication that a stay of foreclosure was applied for or granted. Therefore, if we assume that the foreclosure went forward, Andrade's defenses to liability and damages on the notes would fail as moot. Even if Andrade's defenses were still viable, as our further discussion will reflect, they would be precluded as insufficient in law by application of D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp., 315 U.S. 447 (1942).[2]
 
 
 8
 In D'Oench, Duhme, a bank and its customer entered into a secret agreement whereby the customer provided a demand note to the bank which was duly documented in the bank's records. The bank assured the customer that it would never attempt collection on the note, an assurance which was not documented in the bank's records. When the bank failed, the Federal Deposit Insurance Corporation (FDIC), as receiver, began collection proceedings on the note only to have the customer raise the bank's assurance as a defense. The Supreme Court held that "federal policy" protects the funds of FDIC from enforcement of agreements not documented in the records of the banking institution.[3] See id. at 457. The doctrine of D'Oench, Duhme has been codified at 12 U.S.C. § 1823(e).[4]
 
 
 9
 Andrade's defenses and arguments relating to his liability on the notes, based upon vague representations and conclusory allegations, not apparent in the records of the bank, fall victim to this protection. See Mainland Sav. Ass'n v. Riverfront Assocs., Ltd., 872 F.2d 955, 956 (10th Cir.) (defenses of fraud, gross negligence, reckless conduct, breach of an agreement to fund, and breach of the implied convenant of contractual fair dealing cannot survive D'Oench, Duhme doctrine), cert. denied, 110 S.Ct. 235 (1989); Resolution Trust Corp. v. Colorado 126 Partnership, 746 F.Supp. 35, 36-37 (D.Colo.1990) (D'Oench, Duhme and § 1823(e) bar defenses of fraud, waiver, laches, and estoppel).
 
 
 10
 It would appear that the only issue left for this court's consideration is the fate of Andrade's counterclaims and whether, as RTC argues, they, too, succumb to the sharp edge of D'Oench, Duhme. Andrade's first counterclaim focuses on whether Sun Country breached the terms of the loan agreements or failed to fulfill its obligations under the agreements in good faith. Andrade alleges that Sun Country's refusal to release certain lots for sale caused him considerable financial loss. Andrade further disputes the parties' agreement as to what amount Andrade was to pay to secure the release of the lots. Andrade also asserts that Sun Country failed to properly credit him with payments on the notes. "Bank examiners cannot be misled by documents that evidence the true obligations of the parties." Baumann v. Savers Fed. Sav. & Loan Ass'n, 934 F.2d 1506, 1517 (11th Cir.1991). "[T]he protections provided to the deposit insurance fund by the D'Oench doctrine would not be furthered by allowing financial institutions to breach valid agreements or to carry them out in bad faith." Id.; see also Resolution Trust Corp. v. Wellington Dev. Group, 761 F.Supp. at 738 (counterclaim which can be resolved on basis of documents and correspondence in bank's file not precluded by D'Oench, Duhme ). We therefore conclude that because the terms of the agreement can be ascertained from the bank's records, Andrade's counterclaim of breach of contract escapes D'Oench, Duhme and, because Andrade's contention raises issues of material fact, it escapes summary judgment as well.
 
 
 11
 However, Andrade's further allegations that Sun Country breached its contract in regard to an undocumented one-million-dollar line of credit and an undocumented promise to extend a future loan in the amount of $170,000.00, do not fare as well. These claims are not based on any written agreements readily available in the bank's records and are defeated by D'Oench, Duhme. See Bowen v. Federal Deposit Ins. Corp., 915 F.2d 1013, 1015-16 (5th Cir.1990) (claim of oral promise to loan money subject to D'Oench, Duhme bar).
 
 
 12
 Andrade's counterclaim alleging that Sun Country engaged in fraud and misrepresentation, to the best of our ability to decipher Andrade's somewhat muddled contentions, appears to be based on vague and unspecific oral representations of the bank and unfulfilled expectations of Andrade. Consequently, because we are not obligated to create arguments for a litigant, see National Commodity & Barter Ass'n v. Gibbs, 886 F.2d at 1244, we agree with RTC, and conclude this claim is also precluded by D'Oench, Duhme.
 
 
 13
 Andrade's next counterclaim alleges that he entered into a letter agreement modifying the terms and conditions of the loans under economic duress and compulsion. " 'Duress does not exist merely where consent to an agreement is secured because of hard bargaining positions or the presence of financial circumstances.' " Resolution Trust Corp. v. Ruggiero, 756 F.Supp. 1092, 1095 (N.D.Ill.1991) (quoting Higgins v. Brunswick Corp., 395 N.E.2d 81, 85 (Ill.App.1979)). Although this "agreement" is documented in the bank's records and is, therefore, safe from the axe of D'Oench, Duhme, Andrade presents no facts which would prompt a conclusion that Sun Country did anything other than attempt to fashion a work-out agreement with Andrade which would enable him to cure his defaults while still protecting the interests of the bank. Consequently, we conclude that Andrade raises no issues of fact regarding this claim which would sway a trier of fact in his favor, and therefore, summary judgment was appropriate.
 
 
 14
 Andrade's fourth counterclaim, an allegation of intentional interference with contractual relations, is recognized by New Mexico law as set forth in Restatement (Second) of Torts § 766(B) (1979).[5] See Schmitz v. Smentowski, 785 P.2d 726, 736 (N.M.1990). Andrade alleges that Sun Country intentionally interfered with his business relationship with Ben Ruiz. It is undisputed that Andrade and Ruiz were engaged in a business deal to build an apartment complex on land in which Andrade owned a twenty-five percent interest. Andrade claims that Sun Country promised Ruiz full funding for the project provided he eliminate Andrade from the deal. Also, according to Andrade, Sun Country revealed his very shaky financial position to Ruiz thereby enabling Ruiz to purchase Andrade's twenty-five percent interest at a fraction of its value. Although, this claim appears to be based upon an agreement between the bank and Ruiz, obviously not documented in the bank's records, it is not the kind of agreement, against the interests of RTC, which D'Oench, Duhme purports to protect. See D'Oench, Duhme & Co. v. FDIC, 315 U.S. at 457.
 
 
 15
 RTC, in its brief in support of its motion for summary judgment on this issue, relies on Quintana v. First Interstate Bank of Albuquerque, 737 P.2d 896, 898 (N.M.Ct.App.), cert. denied, 737 P.2d 893 (N.M.1987), in which the New Mexico appellate court stated:
 
 
 16
 The mere refusal to deal with a party cannot support a claim for tortious interference with contractual relations.... As long as the Bank merely refused to enter into business relations ... and left [the business venture] to make its own decision on what to do about the Bank's refusal, plaintiffs have no cause of action.
 
 
 17
 We agree that a bank has a right to decide whether or not to do business with certain persons or entities. Sun Country's actions involving Andrade's business relationship, however, may have extended beyond a refusal to "do business with" Andrade, and actually interfered with the relationship between Andrade and Ben Ruiz "with an improper motive or by improper means." Id. (citation omitted). We conclude that this claim raises disputed issues of material fact which preclude a summary judgment disposition.
 
 
 18
 Lastly, Andrade argues that he should have been allowed to assert his counterclaims against plaintiff in a jury trial and that the court erred in granting plaintiff's motion to strike his jury demand. The district court, relying on Rozelle v. Connecticut General Life Insurance Co., 471 F.2d 29 (10th Cir.1972), cert. denied 411 U.S. 921 (1973), granted plaintiff's motion to strike Andrade's jury demand. In Rozelle, this court held that foreclosure proceedings in federal court are equitable in nature and can be tried in federal court without a jury. Id. at 31. We will disturb a district court's decision regarding the grant of a jury trial only for an abuse of discretion. Federal Deposit Ins. Corp. v. Palermo, 815 F.2d 1329, 1334 (10th Cir.1987). Due to the district court's determination that summary judgment was appropriate as to all issues in this case, albeit erroneous in part, its denial of Andrade's jury demand was not an abuse of discretion. However, as the issues on remand do not relate to foreclosure, the order of the district court striking Andrade's jury demand is vacated. The district court is instructed to reconsider his jury demand in light of this order and judgment.
 
 
 19
 In summary, we hold that Andrade's claims and defenses as to liability on the notes are moot and further precluded by application of the D'Oench, Duhme doctrine. Except for Andrade's allegations of breach of contract relating to the bank's failure to fulfill its obligations under the terms of the notes, and his claim of intentional interference with his business and contractual relations, the remainder of Andrade's counterclaims fall victim to the protection afforded receivers of failed financial institutions. The judgment of the United States District Court for the District of New Mexico is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings in conformity with this order and judgment.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 As noted by RTC in its brief, the notice of appeal names only Andrade personally as the party taking the appeal, and therefore, we will not discuss the district court's conclusions as they relate to Liberty Homes or any other defendant named in the original action. See Fed.R.App.P. 3(c); Torres v. Oakland Scavenger Co., 487 U.S. 312, 314, 317 (1988)
 
 
 [2]
 The RTC could have cited 12 U.S.C. § 1823(e), which is essentially a codification of D'Oench, Duhme. RTC did not, however, argue or brief the applicability of this statute, and we, therefore, consider the issue waived as it may apply to support RTC's argument
 
 
 [3]
 Although D'Oench, Duhme and § 1823(e) refer to the "FDIC," the RTC is deemed to have the same powers and rights as the FDIC in handling the affairs of a failed banking institution. 12 U.S.C. § 1441a(b)(4); Resolution Trust Corp. v. Wellington Dev. Group, 761 F.Supp. 731, 735 (D.Colo.1991)
 
 
 [4]
 12 U.S.C. § 1823(e) states:
 No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement--
 (1) is in writing,
 (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
 (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
 (4) has been, continuously, from the time of its execution, an official record of the depository institution.
 
 
 [5]
 Restatement (Second) of Torts § 766(B) (1979) states:
 One who intentionally and improperly interferes with another's prospective contractual relation ... is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
 (a) inducing or otherwise causing a third person not to enter into or continue a prospective relation or
 (b) preventing the other from acquiring or continuing the prospective relation.