FIRST NATIONAL BANK OF MOLINE, Plaintiff-Appellee, v. MELVIN O. MOHR *et al.*, Defendants-Appellants (Bowe Machine Company *et al.*, Defendants).

Third District   No. 3—87—0194

Opinion filed November 24, 1987.

HEIPLE, J., specially concurring.

Frederick P. Kopp, of Spector, Tappa, Kopp & Nathan, of Rock Island (Herbert M. Spector, of counsel), for appellants.

Schwiebert & Schwiebert, of Moline (Mark W. Schwiebert, of counsel), for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Defendants Melvin O. and Colene E. Mohr appeal from judgment of foreclosure entered by the circuit court of Rock Island County against their residence in Rock Island. In the court's final decree of foreclosure, and over the Mohrs' objections, a homestead exemption of $7,500 was allowed in favor of the Mohrs. In this appeal, the Mohrs present a single issue of first impression in this State—whether section 12—901 of the Code of Civil Procedure, as amended (Ill. Rev. Stat. 1985, ch. 110, par. 12—901), permits both husband and wife to claim homestead exemptions for a combined total of $15,000. For reasons that follow, we reverse.

The facts of this case are not in dispute. Melvin and Colene are husband and wife and owners in joint tenancy of the home against which plaintiff brought suit for foreclosure on a judgment lien. In their answer to the complaint, Melvin and Colene each claimed a $7,500 homestead exemption and prayed that a total of $15,000 be set aside for them out of the proceeds of sale. The trial court, after considering arguments of the parties, denied the Mohrs' prayer for relief; and their home was sold pursuant to the court's order. This appeal followed.

The Illinois Homestead Act was amended by Public Act No. 82—685 effective January 1, 1982. The former version granted to "[e]very householder having a family *** an estate of homestead to the extent in value of $10,000, in the farm or lot of land and buildings thereon owned or rightly possessed by lease or otherwise and occupied by him or her as a residence." (Ill. Rev. Stat. 1981, ch. 52, par. 1, repealed by Pub. Act 82—280, §19B—101, eff. July 1, 1982.) As amended, the section presently reads, in relevant part:

"Every individual is entitled to an estate of homestead to the extent in value of $7,500, in the farm or lot of land and buildings thereon, *** owned or rightly possessed by lease or otherwise and occupied by him or her as a residence ***; and such homestead, and all right and title therein, is exempt from attachment, judgment, levy or judgment sale for the payment of his or her debts or other purposes and from the laws of conveyance, descent and legacy, except as hereinafter provided or as provided in Section 20—6 of the Probate Act of 1975 as amended. This Section is not applicable as between joint tenants or tenants in common but it is applicable as to any creditors of such persons." Ill. Rev. Stat. 1985, ch. 110, par. 12—901.

Prior to 1982, both the statutory language and case law established that the $10,000 homestead exemption granted under the law then in effect was limited to a single individual who qualified as a "householder"—in most instances, the husband, in a case such as this where the husband and wife were joint tenants. Under the former scheme, it was repeatedly held that two separate homestead estates could not coexist in the same premises at any given time. *Dixon v. Moller* (1976), 42 Ill. App. 3d 688, 356 N.E.2d 599.

The only question we are called upon to decide today is whether the legislature intended to limit joint owner/spouses to a single homestead exemption worth $2,500 less than was available under the former scheme or to entitle them to two homestead exemptions totalling $15,000. The answer is found in the legislative history of Public Act No. 82—685. Senate Bill 300 of the 82nd General Assembly was introduced into the State legislature in response to the Federal scheme afforded by the Bankruptcy Reform Act of 1978, which granted substantially greater relief for debtors than was available for Illinois debtors pursuant to the State exemptions in place at that time. Having "opted out" of the Federal scheme, Senate Bill 300 sought to liberalize, or expand, the State exemptions and bring them more in line with the Federal exemptions. *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 281-82, 469 N.E.2d 167, 173-74.

One such "liberalization" was a relaxation of the designation of persons who qualified for the homestead exemption. No longer was such person required to qualify as a "householder having a family." Instead, every "individual" meeting the other factors of ownership or rightful possession and occupancy of the residence in question could claim the exemption. At the same time, the amount of the homestead exemption was reduced from $10,000 to $7,500.

Representative Greiman, concerned about the reduction in the amount of the exemption, proposed an amendment to the bill on second reading on June 23, 1981. He commented, "Under the present Illinois law, there is a homestead exemption of $10,000 for each householder. This Bill establishes a $7,500 exemption for each individual. Now what that means, I suspect, is that a person who, for example, is a widow or widower is indeed a householder and now has $10,000 exemption. *** [W]e are saying that we are going to reduce the exemption from $10,000 for that widow or widower down to $7,500. Now *** the counter-answer to this will be 'Yes, indeed, but we're doing it by *** individual.' So that a husband and wife now get[] $7,500 twice if they both go into bankruptcy. And therefore, for some couples *** it would be a $15,000 exemption. That is true. *** [T]his Amendment

restores the traditional $10,000 limitation for Homestead. Now, make no mistake. If a husband and wife go bankrupt, they would then get $20,000 in equity. *** Accordingly, I have offered this Amendment to raise back from $7,500 [w]hat the Watson Bill reduced it to, to $10,000." 82d Ill. Gen. Assem., House Proceedings, June 23, 1981, at 180-81.

In response, Representative Watson, the House sponsor of Senate Bill 300, observed, "As Representative Greiman mentioned, this [amendment] raises the homestead bankruptcy exemption from *** $7,500 *** to $10,000. A married couple *** will end up with [a] $20,000 exemption instead of $15,000. *** The federal exemptions of which we opt[ed] out *** were $7,500 for an individual, similar to what we have proposed in Senate Bill 300. Representative Greiman wants to liberalize it even more than what the Federal Bankruptcy Act of 1978 did." (82d Ill. Gen. Assem., House Proceedings, June 23, 1981, at 180-83.) Representative Greiman's amendment was defeated. However, it is perfectly apparent from the foregoing discussion that the legislators intended on June 23, 1981, that married, joint owners, such as the Mohrs, would become entitled to two $7,500 homestead exemptions under the legislation.

This theme was repeated in the House discussions on third reading of the bill. On June 27, Representative Watson reiterated that Senate Bill 300 "will make the following changes in regard to homestead exemptions and it makes it applicable to individuals rather than heads of households with families. It decreases the maximum amount from ten thousand to seventy-five hundred; however, husband and wife [who] *** file jointly *** have a total exemption of fifteen thousand." (82d Ill. Gen. Assem., House Proceedings, June 27, 1981, at 289.) The bill ultimately passed both chambers, was signed by the Governor and enacted as Public Act No. 82—685.

In resisting the conclusion that the relief sought by the Mohrs is, indeed, available to them, plaintiff directs our attention to several related sections of the Illinois Code of Civil Procedure which refer to a homestead exemption of $7,500 and cannot readily be reconciled with the construction obviously intended by the legislature's amendment to section 12—901. (See, *e.g.*, Ill. Rev. Stat. 1985, ch. 110, pars. 12—902, 12—909, 12—910.) While we do not deny the ambiguity that such amended sections create within Illinois Homestead Act, we are not inclined to ignore the lawmakers' stated intent by construing section 12—901 with the end merely of rendering it compatible with those related sections which are not here at issue.

In our opinion, the inconsistencies which appear in the Act can

only be explained by noting that the legislature apparently perceived the amendments to sections 12—902, 12—909 and 12—910 as technical and uncontroversial, rather than substantive. They were not discussed or debated in either chamber. (See 82nd Ill. Gen. Assem., Senate Proceedings, May 12, 1981, at 20-21, and May 20, 1981, at 169-70; 82d Ill. Gen. Assem., House Proceedings, June 23, 1981, at 181-87, June 27, 1981, at 289-90, and October 28, 1981, at 22-25.) Accordingly, these amended sections provide no guidance to the legislative intendment of section 12—901.

For the aforestated reasons, we reverse the judgment of the circuit court of Rock Island County and remand this cause for further proceedings.

Reversed; cause remanded.

STOUDER, J., concurs.

JUSTICE HEIPLE, specially concurring:

The statute provides that every individual is entitled to an estate of homestead of $7,500, in property, owned or rightly possessed by lease or otherwise. The effect of this statute is to permit an unlimited number of homestead estates in a single piece of property. Thus, a family unit consisting of a husband and wife with eight children could conceivably claim a $75,000 homestead in the residence occupied by the family. Moreover, no kinship appears to be required. A commune of hippies might claim the same right. Palatable or not, that is what the law allows.

That the legislature fully considered the implications of their change in the law is doubtful. It is not, however, a function of the courts to rewrite the statute. It is a statute, however, which the legislature may want to reconsider and of which, in the meantime, creditors must beware.