In re Carl HOFFMAN, Debtor.

Carl HOFFMAN, Plaintiff,

v.

CENTRAL PENNSYLVANIA
NATIONAL BANK,
Defendant.

Bankruptcy No. 86–2879.
Adv. No. 87–70.

United States Bankruptcy Court,
W.D. Pennsylvania.

May 26, 1988.

Gary W. Short, Pittsburgh, Pa., for debtor.

Terry Despoy, Gieg and Gieg, Altoona, Pa., for Central Pennsylvania Nat. Bank.

James R. Huff, Altoona, Pa., trustee.

MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

In this chapter 13 proceeding, the debtor has filed a complaint to avoid a preferential transfer of money to Central Pennsylvania National Bank ("Central"). The debtor also seeks to avoid a judicial lien to the

extent that it impairs exemptions of the debtor. Insofar as there has been a transfer of property which constitutes a preference, the judgment is for the debtor for $3,849 plus interest.

Carl Hoffman (the "debtor") and his wife, Patricia Hoffman, purchased a house prior to 1980, which they held as tenants by the entirety. Central held various judicial liens on the residence, which were properly recorded in 1980 and 1982. The liens and debt arose from notes voluntarily signed by the debtor and a confession of judgment clause contained therein.

Due to marital difficulties, the debtor and Patricia Hoffman permanently separated on or about August 1, 1983. At that time, the debtor left the residence and thereafter resided elsewhere. Patricia Hoffman continued to live in the residence until it was sold.

The house was sold on August 12, 1986 for $71,000. At the time of the sale, the property had been overencumbered. The liens on the property had totalled over $240,000. From the proceeds of the sale ($71,000), $17,131.29 was paid to the holder of the first mortgage in satisfaction thereof. Of the remaining proceeds, Central received $48,421.63 and released all of its judicial liens on the property. It is uncontested that the debtor was insolvent at that time and did not attempt to conceal the proceeds of the sale.

On November 7, 1986, the debtor filed a voluntary chapter 13 petition. The trustee did not attempt to avoid the transfer of any part of the proceeds of the sale. On February 26, 1987, the debtor commenced this action to recover payment of $7,599 as a preference and to claim it under the exemptions sections.

The power to recover a preferential transfer is ordinarily vested in the trustee. However, 11 U.S.C. § 522(h) (Supp. IV 1986) authorizes the debtor to attack a transfer under certain conditions. The requisite conditions are: "(1) the trustee does not seek to avoid the transfer; (2) the transfer the debtor wants to set aside was involuntary and not concealed by the debtor; (3) the trustee could have avoided the

transfer under § 547; and (4) the property the debtor seeks to recover is exempt." *In re Washkowiak*, 62 B.R. 884, 885 (E.D.Ill. 1986). The first condition has been established and is not contested.

■ Central asserts that the debtor is not entitled to claim an exemption for the proceeds of the sale because the second condition is not met. For a transfer to be recoverable, 11 U.S.C. § 522(g)(1)(A) requires that the transfer be involuntary. Central claims that this payment was made voluntarily because the notes were signed voluntarily and were therefore paid off voluntarily.

There were several transfers involved within this transaction. The term "transfer" as defined in 11 U.S.C. § 101(50) "means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with any interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption...." The definition is broad and comprehensive. As a result, a single transaction, such as the selling of a house, often involves several transfers.

The debtor does not object to the whole transaction. There is no objection to the transfer of the title to the new owners. No objection is made pertaining to the transfer of money in satisfaction of the mortgage. The objection lies in the use of the proceeds of the sale for partial satisfaction of a judicial lien. It is this transfer of money to Central of which the debtor objects and Central argues is voluntary.

The term "voluntary" is not defined within the Code. In the case of *In re Reeves*, 8 B.R. 177, 181 (S.D.1981), the court held that a "voluntary transfer occurs when the debtor, with knowledge of all of the essential facts and free from persuasive influence of another, chooses of her own free will to transfer property to the creditors."

The transfer here was not free of persuasion or duress. Central would not have let the debtor transfer a clean title without receiving the money. As a result, the debt-

or would have been unable to sell the property. Furthermore, after the sale, the debtor was under a compulsion of law to remit the proceeds of the sale to Central. The debtor had no choice or option to use the proceeds for any other use or purpose.

Although Central does not cite any cases which support its position, it criticizes the debtor's reliance upon *In re Washkowiak*, 62 B.R. 884 (Bankr.E.D.Ill.1986). Central claims that case to be factually distinguishable because in the *Washkowiak* case, the underlying debt was not voluntarily incurred and the debtor did not put his house up as collateral. Neither of these arguments are persuasive.

The facts in *Washkowiak* are quite analogous to the facts in the present case. The debtors in that case failed to reimburse the creditor Glenwood Medical Group ("Glenwood") for services rendered. As a result, Glenwood sued the debtors, obtained a judgment, and perfected a lien against the debtors' house. Six days prior to the petition date, the debtors sold their house. The title company withheld sufficient funds to satisfy the judicial lien. That court held that the transfer of the proceeds to Glenwood was not a voluntary transfer. The judicial lien itself was not attacked. It was the satisfaction of the judicial lien which was the transfer the court avoided.

Central's position that their judicial lien was a voluntary lien because the debtor voluntarily signed the notes containing the confession of judgment clause is not dispositive. Like *Washkowiak*, it is not the creation of the lien which is alleged to be the involuntary transfer, but rather it is the satisfaction of part of the lien from the proceeds of the sale of the house. This transfer was made by compulsion of law, not by choice. "[A] payment in effect made under legal compulsion can hardly be characterized as voluntary." *In re Washkowiak*, 62 B.R. at 886.

The debtor was unable to make the payment on even the first mortgage. The debtor was forced either to sell or face foreclosure. This decision was not a free choice, but rather as a result of legal and economic duress. The only choice was in deciding how they wished to lose their house, by foreclosure or by sale. The choice did not, therefore, involve whether to pay Central Bank or not. Since the debtor was unable to affect the route of the proceeds, the transfer was a non-voluntary transfer and meets the requirements of section 522(g)(1) as well as the second condition.

The third and fourth conditions are interrelated. The trustee could have avoided the transfer of the proceeds under section 547 to the extent that Central received more than it would have in a chapter 7 proceeding. If the transfer had not taken place, the debtor could have used section 522(f)(1) to avoid the judicial lien to the extent the lien impaired an exemption to which the debtor was entitled. Therefore, if the debtor can find an exemption to which he is entitled and section 522(f)(1) could have been applied to that lien, then Central received a preference to that extent of that exemption.

■ The debtor has elected to use the exemptions in 11 U.S.C. § 522(d) rather than those permitted under state law. The determination of whether an exemption is available to the debtor is a question of federal law, not state law. The homestead exemption in section 522(d)(1), which the debtor seeks, applies to "property the debtor or a dependent of the debtor uses as a residence...." The term "dependent" is defined in section 522(a)(1) to include a spouse, whether or not actually dependent.

The debtor contends that his wife is a dependent, even though they are separated and seeking a divorce. It is claimed that the debtor's wife was a dependent as a matter of fact and a matter of law. The debtor had been voluntarily providing weekly support payments of $400.00 from the time of their separation until approximately December 1985. The debtor also maintains that his wife is a statutorily defined dependent. Since the debtor's wife is a dependent, and used the house as a residence at the time of the sale, the debtor argues that he is entitled to the homestead exemption.

For the debtor to claim this exemption, he is required to show that the property in question is used by the debtor or a dependent as a residence. The interest in the transaction which the debtor is trying to avoid does not involve an interest in real property. The debtor is trying to avoid both the transfer of part of the funds from the sale of the house and Central's judicial lien on those funds. The debtor is not trying to recover the house. Nor does he allege that the property (money from the sale) is used as a residence. Because neither the debtor nor a dependent use the proceeds as a residence, the homestead exemption is not available.

■ Although the homestead exemption is not available, the debtor may still claim an exemption of $3,849 from the proceeds of the sale. The debtor may claim $3,750 of unused homestead exemption pursuant to 11 U.S.C. § 522(d)(5) (Supp. IV 1986). The debtor may also apply his wild card exemption to these funds in the amount requested ($99).

■ Finally, the debtor contends that he is entitled to prejudgment interest from the date of demand for the return of the preference, or in the absence of a prior demand, the date of the commencement of the adversary proceeding. It is the debtor's claim that he is entitled to interest at the legal rate from the date of this action on February 26, 1987.

Prejudgment interest may be awarded in a preference action. *In re Four Seasons Sporting Goods, Inc.*, 46 B.R. 528 (Bankr. Calif.1985) and *In re Fulghum Construction Corporation*, 78 B.R. 146 (M.D.Tenn. 1987). Central has not countered this position with either law or equities. Therefore, the request will be granted at Pennsylvania's legal rate of interest (6%). 41 P.S. § 202 (Supp.1987).

An appropriate order will issue.