ALICE ARIANS *et al.*, Plaintiffs and Counterdefendants-Appellees, v. LARKIN BANK, Defendant and Counterplaintiff-Appellant (Michael W. Arians *et al.*, Counterdefendants-Appellees).

Second District   No. 2—93—0046

Opinion filed December 22, 1993.

1038

Frank V. Ariano and Gary M. Vanek, both of Ariano, Anderson, Bazos, Hardy & Castillo, of Elgin, for appellant.

Robert S. Wilson, of Sycamore, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

The defendant-counterplaintiff, the Larkin Bank, appeals from the judgment of the circuit court of Kane County in favor of the plaintiffs-counterdefendants, Alice and Carl E. Arians, which declared rescinded a $57,875.43 note and accompanying trust deed held by the bank on their farm. The trial court denied the bank's counterclaim for foreclosure on the Arianses' mortgage and a personal deficiency judgment. We affirm.

The Arianses owned a farm in Kane County that they leased to their son, Michael, in 1973. Michael owned an auto body shop and farmed his parents' land. Over a period of years, Michael frequently borrowed money from the Larkin Bank. Early in 1981 bank officials noted substantial overdrafts in Michael's checking account and suspected him of conducting a "check kiting" scheme in which he allegedly deposited checks drawn on one of his accounts into a second account and drew funds against the deposit when in fact insufficient funds existed to cover the deposited checks. The scheme allegedly involved the "floating" of checks between accounts Michael held at Larkin Bank and at Lakeland Bank in Merrill, Wisconsin. The Larkin officials originally believed the overdrafts resulting from the scheme would amount to $30,000. The bank demanded payment of the alleged overdrafts.

On May 11, 1981, Carl and Alice Arians accompanied their son to the Larkin Bank office of Thomas Euen, then president of the bank. He told them of the overdrafts, and immediately thereafter, Carl and Alice executed a note secured by a trust deed on their farm in the amount of $30,000. Proceeds of the note were used to cover the overdrafts at Larkin and Lakeland. The remainder was applied to the May 11 note. On March 5, 1982, Carl and Alice signed a consolidation note in the amount of $57,875.43, also secured by a trust deed on their farm, which is the subject of the

present matter. After one payment was made on the new note, the bank declared a default and accelerated the entire amount of the principal due. Carl and Alice then sued to block enforcement, and the bank counterclaimed for foreclosure.

Following extensive discovery and pretrial motions, the trial court granted the bank's motion for summary judgment to enforce the foreclosure and dismiss the Arianses' claim that the March 5 note was procured by duress and should be rescinded. The Arianses then appealed, claiming they were entitled to an evidentiary hearing on their duress claim. We reversed the grant of summary judgment and ordered the cause remanded for trial on the merits of the duress claim. (*Arians v. Larkin Bank* (1989), 186 Ill. App. 3d 1105 (unpublished order under Supreme Court Rule 23).) A bench trial commenced on March 4, 1991, after which the court ruled in favor of the Arianses and against the bank. A post-trial motion by the bank was heard on August 26, 1992, and denied on December 14, 1992. This appeal followed.

The bank raises seven claims on appeal: (1) the plaintiffs failed to prove by clear and convincing evidence that they were entitled to rescission; (2) evidence established that the March 5, 1982, note and trust deed are valid and binding; (3) the trial court failed to address and find that, as a matter of law, the plaintiffs did not waive their defenses of duress and lack of consideration; (4) the trial court erred in permitting the plaintiffs to introduce certain exhibits without proper foundation during their case in chief; (5) the judgment order of the trial court fails to specify whether its ruling relates to count one or two of the plaintiffs' complaint and fails to recite sufficient findings to sustain its judgment; (6) the trial court erred in denying the defendant's motion for directed finding at the close of the plaintiffs' case in chief; and (7) the trial court erred in permitting the plaintiffs to call and examine Stanley R. Simpson as an adverse witness in their case in chief. For the following reasons, we affirm.

Although this case has produced a voluminous record over some 10 years, the dispute is quite simple. The Arianses claim that the only reason they signed both the $30,000 note and trust deed on May 11, 1981, and the $57,875 note on March 5, 1982, is that Mr. Euen, in his capacity as president of Larkin Bank, exerted undue influence on them by threatening to prosecute their son Michael for his alleged check-kiting scheme if they did not execute the note.

The bank's position is equally simple. Euen claims he made no threats but merely informed the Arianses of their son's illegal activ-

ity and that they voluntarily executed the notes to help their son. Michael was never prosecuted, and funds from his parents' note were used to cover overdrafts which indisputedly existed. Michael denied that he engaged in illegal check kiting.

The bank's first claim, which is the lynchpin of this case, is that the Arianses failed to prove by clear and convincing evidence that they were entitled to rescission of the note in question and the corresponding trust deed. The plaintiffs based their claim for rescission largely on the defense of duress.

■ A contract will be voided if it is the product of duress. (*Ekl v. Knecht* (1991), 223 Ill. App. 3d 234, 241.) A party seeking the rescission of a contractural obligation on a theory of duress has the burden of proving that claim at trial. (*First Security Bank v. Bawoll* (1983), 120 Ill. App. 3d 787, 793-94.) Duress exists when a party is induced by the wrongful act of another to make a contract under circumstances which deprive the party of his or her free will. (*First Security Bank*, 120 Ill. App. 3d at 793.) Mere annoyance or vexation will not constitute duress. (*People ex rel. Drury v. Catholic Home Bureau* (1966), 34 Ill. 2d 84, 92-93.) A wrongful act need not be an illegal act, but may be wrongful in a moral sense. (*Kaplan v. Kaplan* (1962), 25 Ill. 2d 181, 186.) Duress may be claimed even when there has been no arrest of the debtor and the creditor simply threatens to invoke the same criminal process that is available to the public generally. (*Osage Corp. v. Simon* (1993), 245 Ill. App. 3d 836, 845.) Duress as a defense is foreclosed only when the debtor is threatened with the consequences of nonpayment of the debt in question. *Osage Corp.*, 245 Ill. App. 3d at 845.

In a bench trial, the judge, as trier of fact, is in a superior position to determine the credibility of the witnesses and the weight to be given their testimony. (*Magnone v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 170, 176.) Therefore, a reviewing court will not substitute its judgment for that of the trial court unless it is against the manifest weight of the evidence. (*Aetna Insurance Co. v. Amelio Brothers Meat Co.* (1989), 182 Ill. App. 3d 863, 865.) A decision by the trial court is not against the manifest weight of evidence when the court's decision is supported by the evidence. *Misch v. Meadows Mennonite Home* (1983), 114 Ill. App. 3d 792, 802-03.

■ There was more than sufficient evidence in the form of testimony by Carl, Alice and Michael Arians from which the court could conclude that Carl and Alice were under duress when they executed both the May 11, 1981, note for $30,000 and the March 5,

1982, note for $57,875, which consolidated the first. We believe that the trial court had more than a sufficient basis to conclude that Thomas Euen's acts in threatening to "send Michael to the penitentiary" were wrongful and that they overwhelmed Alice's and Carl's free will. The appellant's brief claims that the trial court's findings were against the manifest weight of evidence but largely offers only conclusory argument in support of its position. The appellant argues, in essence, that its witnesses were credible and the plaintiffs' were not. We know of no rule or case law which declares that one party is entitled to have its witnesses believed merely because that party claims its witnesses are more credible. Credibility is for the trier of fact to determine. *Magnone*, 126 Ill. App. 3d at 176.

Alice Arians testified that, when she met with Euen at his request on May 11, 1981, he told her and Carl Arians that Michael would be sent to the penitentiary "if this problem that existed [check kiting] wasn't solved by us signing the *** $30,000 note." She said that she and her husband signed the note and trust deed "to keep Mike out of jail" and that Euen "gave us no choice." She said she and her husband "were pulverized with fear." She also testified that she and her husband signed the $57,870 note on March 5, 1982, because Euen renewed his threats to send Michael to prison if the new note was not signed. She said she signed that March 5 note "to keep Mike out of jail" and stated that she received no funds from the note.

Mrs. Arians also testified that a young man who worked at the bank named "Tim" called her regularly and told her that "if we didn't make those payments, our property was gone, our farm was gone." She said Tim "kept telling me that the bank had us between a rock and a hard place." After she and her husband filed suit against the bank, Alice Arians testified, Euen told her "I was being very foolish; that the bank had more money than we did, and they were going to fight on this case if it took them to the Supreme Court."

Carl Arians testified that Euen told him and his wife at the May 11, 1981, meeting: "Your son is involved in a penitentiary situation here. It's got to be cleared up immediately." Carl said that during the March 5, 1982, meeting, Euen told him the $57,875 note was "a consolidation of the notes, the monies that was [sic] still due, and that Michael was not out of the woods yet." He said he signed the $57,875 note to keep his son out of prison. He said he asked Euen after their March 5, 1982, meeting if Euen would have

prosecuted Michael had he and his wife not signed the new note and Euen responded: "You're damned well right I would have."

The bank produced at trial the testimony of Thomas Euen, who testified that he simply informed Carl and Alice Arians of their son's alleged check-kiting activity and that he would be required by law to report the activity if it resulted in any loss to the bank. He denied making any threats to Carl and Alice.

To support its claim that Carl and Alice were not under duress, the bank introduced evidence that the plaintiffs had guaranteed or cosigned other loans for their sons on occasions prior to signing the two notes at issue in this case. The bank's evidence consisted of notes for two loans not directly in issue in this case, both of which bore the signatures of Carl and Alice Arians as guarantors or co-makers, and testimony by Stanley R. Simpson that Carl and Alice did in fact sign earlier notes. Carl and Alice both testified that they did not sign notes other than the two at issue in this case and that their signatures on the earlier notes were forgeries.

The bank's theory was that, because the plaintiffs routinely co-signed or guaranteed notes for their son, their claim that they never would have executed the notes in question but for the bank's duress was not credible. Of course, proof of such prior cosignings would not automatically mean that the plaintiffs could not possibly be under duress at a later time. However, if the trial court believed that the plaintiffs had signed other notes, such evidence would weigh against the plaintiffs' duress claim.

Michael Arians testified that he and his wife Christiana forged Alice's and Carl's signatures on the back of a November 1, 1980, loan for $35,000 because bank vice-president Stanley Simpson insisted 10 days after the loan had been approved and funds paid that the parents' signatures were needed. Michael said Simpson told him it was all right for Michael and his wife to forge Alice's and Carl's signatures, which they did. Simpson testified that he personally saw both Carl and Alice sign the November 1, 1980, loan for $35,000 and that he saw Alice Arians sign the renewal of that note.

In its judgment order, the trial court made a specific finding that it believed the Larkin Bank officials made the threats of prosecution and that Carl and Alice Arians would not have executed the May 11, 1981, or March 5, 1982, notes and trust deeds had it not been for the threats, which amounted to undue influence. Such a finding is clearly supported by the record.

The present matter is similar to the case of *Kronmeyer v. Buck* (1913), 258 Ill. 586, in which the supreme court held that Buck used

duress to secure a $1,500 note. Buck accused an employee, Kronmeyer, of stealing from him and threatened to send him to prison unless he executed a deed conveying property to Buck. Buck demanded that Kronmeyer execute a $1,500 note with a cosigner. Kronmeyer asked his sister to cosign, which she did. The supreme court noted that the sister was an innocent third party and was not obligated to Buck, that she signed the note specifically to keep her brother out of jail, and that the suddenness with which she was informed of the charges and the coercive atmosphere surrounding the cosigning amounted to duress. (*Kronmeyer*, 258 Ill. at 595.) Also similar to the present case is *Corn Belt Lumber Co. v. Doty* (1918), 212 Ill. App. 521, in which the appellate court upheld a verdict that voided a promissory note signed by a woman who claimed that she signed the note solely because of threats by the plaintiff's predecessor to press criminal charges against her husband.

We believe these cases are controlling. There was clear, credible evidence that the plaintiffs were coerced by a sudden, startling revelation that their son would be sent to prison if they did not immediately sign a $30,000 note backed up by their farm. The renewal note of $57,875 was signed under an ongoing threat of imprisonment. Although there was no suddenness or shock prevalent in the second instance, the threat was just as real.

▬▬ The defendant also claims on appeal that the trial court failed to make a specific finding on its claim that the Arianses waived their duress and lack of consideration claims, though the defendant cites no authority to indicate that even if true such a claim would require reversal. The defendant states in its brief that, based on our previous decision in this case (*Arians v. Larkin Bank* (1989), 186 Ill. App. 3d 1105 (unpublished order under Supreme Court Rule 23)), the trial "should, therefore, have made findings on the evidence relating to the issues of waiver, estoppel and ratification as presented and argued by the Bank, and its failure to do so is reversible error." (See *Arians*, No. 2—88—0377, slip op. at 13-14.) Oddly, the defendant accurately quotes from our earlier *Arians* decision, but that quote does *not* mandate that the trial court make a specific finding on waiver, estoppel or ratification. We stated in the first *Arians* decision that a trial must be held on the crucial issue of duress. See *Arians*, No. 2—88—0377, slip op. at 13-14.

The trial court's judgment in favor of the plaintiff and its rejection of the defendant's counterclaim is a clear and specific rejection of the defendant's theories. Additionally, under Supreme Court Rule 366(b)(3)(i) a trial court in a nonjury case is not required to make

"special findings of fact, certificate of evidence, propositions or law, motion for a finding, or demurrer to the evidence." (107 Ill. 2d R. 366(b)(3)(i).) On appeal, we will presume that the trial court found all issues and controverted facts in favor of the prevailing party. *Kern v. Rafferty* (1985), 131 Ill. App. 3d 728, 731; *Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1059.

■ The defendant's brief claims that the rescission of the plaintiffs' note "erases the undisputed largest valid portion of that note." However, the "undisputed" portion to which the defendant refers is from a November 1, 1980, note for $35,000 held by the bank against Michael on which the allegedly forged signatures of Carl and Alice appear. When the trial court rescinded the $57,850 note held against Carl and Alice, that relieved the plaintiffs of any indebtedness to the bank on *that* note, which was the only note from which the plaintiffs sought rescission. It was not necessary for the trial court to delineate the status of other notes to resolve the issue at bar.

It was also unnecessary for purposes of an adequate resolution to this case for the trial court to make a specific finding as to whether the signatures of Carl and Alice on the $35,000 note of November 1, 1980, and its renewal, were forgeries. By rescinding the $57,850 note and trust deed, it becomes irrelevant whether the November 1, 1980, note and its renewal actually contained forgeries. As we noted above, the forgery question was relevant only to the credibility of the duress claim.

Further, the court was not required to make any findings on the plaintiffs' lack of consideration claim because duress is a sufficient basis for rescinding the note. As to the defendant's claim that the plaintiffs waived their defense of duress by signing the second note for $57,850, we believe it is readily apparent that, just as duress is a defense to signing an original agreement, duress is a defense to signing a renewal, and the trial court specifically found duress as to both notes in question.

There is no merit in the defendant's claim that, because Carl and Alice did not point out to the bank that their signatures on the November 1, 1981, note for $35,000 were forgeries, they are estopped from claiming their invalidity. Again, this argument ignores the underlying finding of duress, which invalidated the note.

■ Also unavailing is the bank's claim that the trial court failed to delineate whether it was granting relief on the plaintiffs' first count, which prayed for a declaratory judgment that the May

5, 1982, note and trust deed were unenforceable for lack of valuable consideration, or count two, which simply prayed for rescission of the note and trust deed. Both counts alleged duress. The court clearly stated in its ruling that it found for the plaintiffs and against the defendant on its counterclaim for foreclosure. As we have noted, the judgment of rescission based on duress made it unnecessary to consider the lack of consideration claim.

■ There is no merit to the bank's claim that it was prejudiced when the trial court permitted the plaintiffs to call Stanley R. Simpson as an adverse witness in their case in chief.

The Code of Civil Procedure permits a witness to be called as an adverse party and thus be examined by leading questions as if on cross-examination, if that witness is a party to the action or is "any person for whose immediate benefit the action is prosecuted or defended, or the officers, directors, managing agents or foreman of any party to the action." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1102 (now 735 ILCS 5/2—1102 (West 1992)).) To qualify as an adverse party, the witness must perform some function of authority with the opponent to the side calling that witness. (*Manzanek v. Rockford Drop Forge Co.* (1981), 98 Ill. App. 3d 956, 962.) The status of the witness is determined at the time of trial, not at the date the cause of action arose. (*Bituminous Casualty Corp. v. City of Harrisburg* (1942), 315 Ill. App. 243, 249.) However, even if a trial court improperly allows a witness to be called as an adverse witness, reversal will be required only upon a showing of prejudice to the objecting party. *Manzanek*, 98 Ill. App. 3d at 962.

In the present case, there was evidence that Simpson was directly associated with the defendant and thus properly allowed to testify as an adverse witness. Simpson was a former officer of the bank, though not at the time of trial, but was the trustee of the defendant's trust deed. However, we need not determine whether he was properly allowed to testify as an adverse witness because no prejudice was suffered by the appellant. Indeed, Simpson's testimony helped the bank more than it aided the plaintiffs.

On cross-examination during the plaintiffs' case in chief, Simpson directly refuted Michael Arians' claim that he advised Michael to forge his parents' signatures. Simpson testified that he personally observed both Carl and Alice sign the November 1, 1980, note for $35,000, and he saw Alice sign the April 30, 1981, renewal. The only testimony by Simpson that aided the plaintiffs was his statement on direct examination that he considered Alice and Carl to be honest people.

■ Also unavailing is the appellant's claim that it was improper for the trial court to permit the plaintiffs to reopen their case in chief to submit the originals of the notes in question. It is well within the trial court's discretion to permit such action, and the decision will not be disturbed on appeal unless it is an abuse of discretion. (*Country Life Insurance Co. v. Goffinet* (1969), 117 Ill. App. 2d 338, 343.) In this case, there was nothing improper in the court's exercise of discretion. The originals of the notes in question were in the defendant's possession, and copies had been attached to the original pleadings. There was no question that the notes existed; they were the basis for this action. We agree with the trial court's reasoning in allowing the plaintiffs to reopen their case and introduce the originals. The court determined that, while the failure by the plaintiffs to offer the originals might constitute a violation of the rules of evidence and procedure, it would have worked substantial injustice to allow this case, already in the courts for a decade, to be derailed by a technicality when no real prejudice was suffered by the defendant. The court's ultimate conclusion that duress existed was obviously based not on the formal presentation of the original notes, but on testimony.

■ Finally, the defendant has waived its claim that it should have been granted a directed finding at the close of the plaintiffs' case in chief. When a ruling on a motion for directed finding in a nonjury case is adverse to the defendant and the defendant then proceeds to adduce evidence of its own, as occurred in this case, the defendant waives its motion for a directed finding. Ill. Rev. Stat. 1991, ch. 110, par. 2—1110, (now 735 ILCS 5/2—1110 (West 1992)); see *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

GEIGER and DOYLE, JJ., concur.