**In re Lutvi DALIP, Debtor.**

**Bankruptcy No. 95 B 22854.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

April 3, 1996.

A. Douglas Wellman, Chicago, IL, for Debtor.

Walter Hess, Chicago, IL.

Robert Katz, Chapter 7 Trustee, Chicago, IL.

Joel R. Nathan, Assistant U.S. Attorney, Chicago, IL, for U.S.

### *MEMORANDUM OPINION ON DEBTOR'S MOTION FOR TURNOVER*

JACK B. SCHMETTERER, Bankruptcy Judge.

This contested proceeding relates to a voluntary petition for relief filed under Chapter 7 of the Bankruptcy Code by debtor Lutvi Dalip ("Debtor") on October 26, 1995. Debtor seeks by motion to adjudicate his right to an escrow fund resulting from pre-bankruptcy sale of his home, although he originally agreed for that fund to be paid to the United States to apply on its claim for back taxes due from him. He relies on §§ 522, 724, 725,

and 726 of Title 11 U.S.C. and seeks to avoid the consequences of his earlier agreement.

While couched as a "Motion for Turnover,"[1] the fund would be his and subject to a turnover motion only if something amounting to a declaratory judgment were entered in his favor, avoiding a transfer of property under §§ 547(b) and 548, Title 11 U.S.C. Thus, ordinarily an Adversary Complaint would be required under Fed.R.Bankr.P. 7001. However, on January 12, 1996, an Assistant United States Attorney appeared and, in open court, waived on behalf of the United States the objection (previously asserted by it in its Answer) to failure of Debtor to file an Adversary Complaint. This was done because Debtor's counsel had been called up for military service in Bosnia and has left the country for at least six months.

That left this proceeding as a contested matter under Fed.R.Bankr.P. 9014 to be treated as if it were an adversary proceeding in all respects except for lack of need for formal complaint and service of summons.

There has been no trial or motion for summary judgment nor any formal motion for judgment on the pleadings. However, counsel for Debtor (now serving in Bosnia as a Colonel of the United States Army Reserve in the Judge Advocate General's Corps) wrote the Assistant United States Attorney (by letter filed of record) requesting "a written ruling under advisement or otherwise," and the Assistant United States Attorney likewise requested a dispositive ruling. In this context, the requests of both parties will be treated as cross-motions for judgment under Fed.R.Bankr.P. 7012 (Fed.R.Civ.P. 12(c)) on the pleadings. Those pleadings include the Motion, the Answer of the United States thereto, and movant's Reply to the Answer.

The motion of Debtor (treated as an Adversary complaint) does not state a cause of action and could be dismissed for failure to file a pleading asserting grounds for relief. However, because the pleadings show that Debtor cannot legally plead a viable cause, and because the parties' rights were already adjudicated by agreement in a prior state court proceeding, final judgment will be entered denying all relief sought.

### UNDISPUTED FACTS

The following facts appear from the pleadings to be undisputed:

Mr. and Mrs. Dalip were formerly joint fee owners of their homestead property located at 5638 South Harvey in LaGrange Highlands, Illinois. The holder of the mortgage on that property filed a state court suit to foreclose the mortgage. On February 8, 1995, the state court entered judgment of foreclosure providing for sale of the property.

The United States was joined as defendant in the foreclosure action by reason of its prior tax assessment against Mr. Dalip for $46,768.96, issued for his asserted failure to account for employment taxes. It had recorded a notice of federal tax lien in the county wherein Debtor's home was located on April 29, 1988, and again on April 26, 1993. Under Illinois law and the Internal Revenue Code, such recording fixed and then perpetuated the government's lien on debtor's property. 770 ILCS § 110/2, and §§ 6321, 6322, and 6323(a) of the Internal Revenue Code, Title 26 U.S.C.

On October 3, 1995, pursuant to the judgment of foreclosure, the debtor's home was auctioned at judicial sale. A third party was the successful bidder. The sale was confirmed by the state court on October 23, 1995. After payment of sale expenses and the outstanding mortgage balance, net surplus sale proceeds amount to $24,930.82 (the "Surplus Fund").

On October 23, 1995, the Debtor and his wife Susan jointly moved the state court judge to order the Surplus Fund turned over to them. The same day, the Government moved in that court for turnover of that part

---

**1.** The relief actually sought is an order on the Sheriff of Cook County to turn over a fund held by that office following the judicial sale described below. However, neither that official nor his attorney, the State's Attorney of Cook County, was noticed. That omission, which would prevent any relief sought herein, could be remedied. However, for reasons discussed below, the ruling does not turn on this issue.

of the Surplus Fund otherwise due to Lutvi Dalip, based on its tax lien attaching to Mr. Dalip's "property and rights to property" under 26 U.S.C. §§ 6321 and 6322. The parties resolved the controversy thereby posed before the state court by entry in that proceeding of an agreed order equally dividing the Surplus Fund between Susan Dalip and the United States, under which each was to receive $12,465.41. The Government's share was still held by the Sheriff of Cook County three days later when the debtor filed his bankruptcy petition. Less than two weeks later, his present motion was filed.

Further undisputed facts are set forth in the following discussion.

### DISCUSSION

Pursuant to 11 U.S.C. § 522 and §§ 724–26, the Debtor's Motion seeks to avoid the turnover of $12,465.41 that was awarded to the United States by agreed order in the foreclosure case (the "Turnover Order"). Debtor's Motion relies upon 11 U.S.C. § 522(h) for avoidance of the foreclosure case Turnover Order.

Debtor contends that the Turnover Order was an involuntary transfer of property that he could have exempted under § 522(g) of the Bankruptcy Code had such transfer not been ordered in the foreclosure proceeding, and that such transfer is avoidable under § 724(a) by the Chapter 7 trustee had the trustee sought to avoid the transfer. Since the trustee did not seek to avoid the assertedly avoidable transfer, Debtor seeks to do so.

In addition to § 724, the Debtor's Motion refers to §§ 725 and 726. However, since his claim arises under § 522(h), which makes no reference to either section, and neither section provides for avoidance of transfers, the Debtor must rely upon § 724(a) as a basis to avoid the Turnover Order.

Section 724(a) provides that "the trustee may avoid a lien that secures a claim of a kind specified in section 726(a)(4) of this title." Section 726(a)(4) provides:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

.        .        .        .        .

(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;

The Motion fails to specify how the tax claim underlying the targeted tax lien falls within the purview of § 726. Possibly Debtor bases that assertion on grounds that the underlying tax assessment against him arose under 26 U.S.C. § 6672, which provision describes that assessment as a penalty. Alternatively, Debtor may be arguing that the tax claim includes an accrual or addition to the tax and interest secured by the subject tax lien.

### No claim stated under Section 522(h)

■ The Debtor's Motion fails to state a claim under § 522(h), Title 11 U.S.C. Section 522(h) allows a debtor to avoid certain transfers of exempt property. The debtor must meet five conditions to satisfy the elements of § 522(h). Those five conditions are that: (1) the transfer cannot have been a voluntary transfer of property by the debtor; (2) the debtor cannot have concealed the property; (3) the trustee cannot have attempted to avoid the transfer; (4) the debtor must exercise an avoidance power usually used by the trustee that is listed within § 522(h); and (5) the transferred property must be of a kind that the debtor would have been able to exempt from the estate if the trustee has avoided the transfer pursuant to one of the statutory provisions in § 522(g). *In re Douglas P. DeMarah,* 62 F.3d 1248, 1250 (9th Cir.1995); *Washkowiak v. Glenwood Medical Group (In re Washkowiak),* 62 B.R. 884, 885 (Bankr.N.D.Ill.1986).

■ The Debtor fails to allege any of the requisite conditions of § 522(h). He does not plead that the transfer in issue was not a

voluntary transfer of property by him, or that the transferred property was of a kind that he would have been able to exempt from the IRS tax lien.

As earlier noted, on October 23, 1995, the Dalips, as joint tenant owners and holders of a homestead exemption in the LaGrange Highlands Property, jointly moved for turnover of the Surplus Fund. Also on October 23, 1995, the IRS petitioned the state court judge for turnover of the Surplus Fund to the extent of Lutvi Dalip's interest.

Those competing petitions for turnover of the Surplus Fund were resolved by agreement. The United States and the Dalips agreed to entry of an order that the Surplus Fund be equally divided between the competing petitions and distributed according to that division.

Thus the agreed state court order that declared half the Surplus Fund to belong to the United States was on its face a voluntary transfer by the Debtor of his portion, a transfer that Debtor agreed to notwithstanding his homestead exemption claim under state law.

Debtor's Reply seeks to meet this problem by pleading an explanation for the agreed split of the Fund in his Reply:

> [T]he Dalip's agreed because to tie up the entire $24,930.92, 50% of which was *unencumbered* interest of Mrs. Dalip, in Motions for months, win or lose over the other $12,465.41 would have left the Debtor and his wife no funds to move by November 23, 1995.

> . . . . .

> When one is faced with no funds to move or have potential funds tie-up [sic] in court proceedings and agrees to a court order is this voluntary transfer? Debtor submits it is not.

■ To the extent Debtor thereby seeks to plead some form of legal duress that made his agreed transfer involuntary, he has clearly failed. Legal duress was not pleaded here. In order to plead legal duress, Movants must show that the government's demand meets the three-prong test for economic duress: 1) by a wrongful act of another, 2) one side is coercively induced to make a contract, 3) under circumstances which deprive him of the exercise of free choice. *Alexander v. Standard Oil Co.*, 97 Ill.App.3d 809, 814–15, 53 Ill.Dec. 194, 198, 423 N.E.2d 578, 582 (5th Dist.1981); *RTC v. Ruggiero*, 756 F.Supp. 1092 (7th Cir.1991); *Sneeden v. United States*, 33 Fed.Cl. 303, 310 (Ct.Cl. 1995). A contract executed under such circumstances is voidable.

■ The concept of duress as a remedy to revoke a prior legal transaction as involuntary is found in the law of contract. *See* Restatement (Second) of Contract, § 175(1) at 478 (1981). Inequitable or unequal exchanges between parties of disproportionate bargaining power can be corrected where agreements were entered into under coercive circumstances. *Blanton v. Prudential– Bache Securities*, 105 B.R. 321, 341 (E.D.Va. 1989). But courts should be reluctant to restructure previously struck bargains. *Id.*

■ The moving party must show that the threat must have left the individual "bereft of the quality of mind essential to the making of a contract." *Alexander*, 97 Ill.App.3d at 814–15, 53 Ill.Dec. 194, 423 N.E.2d 578; *Arians v. Larkin Bank*, 253 Ill.App.3d 1037, 1040, 192 Ill.Dec. 946, 949, 625 N.E.2d 1101, 1104 (2d Dist.1993). Wrongful acts that can constitute duress include not only acts that are criminal, tortious, or violate a contractual duty, but also those that are wrongful in a moral sense. *DeFontaine v. Passalino*, 222 Ill.App.3d 1018, 1029–30, 165 Ill.Dec. 499, 506–07, 584 N.E.2d 933, 940–41 (2d Dist. 1991). Wrongful acts could also include the imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress of another to such an extent his free agency is overcome. *Stavins v. Stavins*, 70 Ill.App.3d 622, 26 Ill.Dec. 927, 388 N.E.2d 928 (1st Dist.1979); *Butitta v. First Mortgage Corp.*, 218 Ill.App.3d 12, 17– 18, 160 Ill.Dec. 937, 941, 578 N.E.2d 116, 120 (1st Dist.), *app. denied*, 142 Ill.2d 652, 164 Ill.Dec. 915, 584 N.E.2d 127 (1991).

Mr. Dalip's legal duress argument is not supported by his pleading. The fact that the government may have engaged in hard bargaining is not sufficient to constitute legal duress. Economic pressure and even the

possibility of severe financial loss also do not qualify as duress. As stated in *Higgins v. Brunswick Corp.,* 76 Ill.App.3d 273, 278, 32 Ill.Dec. 134, 138, 395 N.E.2d 81, 85 (1st Dist. 1979),

> Duress does not exist merely where consent to an agreement is secured because of hard bargaining positions or the presence of financial circumstances. In cases where agreements have been invalidated because of duress, the conduct of the party obtaining the advantage is tainted with some degree of fraud or wrongdoing.

Under the foregoing standards, the argument that duress is inferred from the Movant's explanation that there would be no money left to move by November if he and his wife were not able to settle the tax claim with the government quickly is clearly insufficient. None of the elements of legal duress were pleaded, so Debtor's present effort cannot succeed under 11 U.S.C. § 522(h) because the transfer order was agreed to.

However, even if Debtor were to supply an amended pleading or Adversary Complaint to plead legal duress, he could not prevail because he has another problem here that is legally dispositive.

### *No Part of the Surplus Fund Can Be Exempted from the Tax Lien*

Debtor's Motion refers to his homestead exemption of $7,500 and also his "wild card" exemption as supplying another condition of § 522(h), that the transferred property be of a kind that the Debtor would have been able to exempt under § 522(b) had the trustee recovered the property under § 522(g)(1).

█ Debtor seeks to avoid the partial transfer of funds to satisfy a tax lien by using the Illinois wild card exemption under 735 ILCS 5/12–1001 (formerly Ill.Ann.Stat. ch. 110 § 12–1001(b) (Smith Hurd 1985)). This provision allows a Chapter 7 debtor to claim an exemption in "the debtor's equity interest, not to exceed $2,000 in value, in any other property." *In re Allman,* 58 B.R. 790, 791 (C.D.Ill.1986). This exemption statute was passed to protect debtors and their families from being completely deprived of the means of supporting their families and from becoming public charges. *Matter of Barker,* 768

F.2d 191, 195 (7th Cir.1985). Combining this exemption with another, like the homestead exemption, does enhance a debtor's opportunity to realize self-sufficiency as contended by the Debtors. The rights to such exemption claims must be determined at the time of bankruptcy filing. *In re Sajkowski,* 49 B.R. 37, 39 (Bankr.D.R.I.1985).

However, the transferred property involved here could not have been exempted under § 522(g)(1) of the Bankruptcy Code. A federal tax lien attaches to all of a debtor's property without exception. 26 U.S.C. § 6321, *In re Voelker,* 42 F.3d at 1051. Section 522(c)(2)(B) of the Bankruptcy Code does not allow avoidance of a tax lien under any exemption provisions of § 522, including the homestead exemptions of § 522(d)(1) and wild card exemptions under § 522(d)(5). *DeMarah,* 62 F.3d at 1252. Lower courts have similarly held that a state homestead exemption does not take priority over a pre-existing lien. *In re Harrison,* 164 B.R. 611, 614 (Bankr.N.D.Ill.1994); *Home Savings of America v. Chicago Title and Trust,* 1995 WL 23042 (N.D.Ill.1995).

Pursuant to 26 U.S.C. § 6321, the IRS tax lien attached to the Debtor's "property and rights to property" in the LaGrange Highlands Property, notwithstanding his homestead exemption claim. *In re Voelker,* 42 F.3d 1050 (7th Cir.1994).

Moreover, to construe § 522(h) as permitting avoidance of the transfer of funds in satisfaction of the IRS tax lien would conflict with § 522(c)(2)(B), which provides that

> (c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case, except—
>
> .    .    .    .    .
>
> (2) a debt secured by a lien that is—
>
> .    .    .    .    .
>
> (B) a tax lien, notice of which is properly filed....

Thus, while § 522(h) permits avoidance of involuntary transfers of exempt property, it does not permit avoidance of such transfers

out from under tax liens. *DeMarah,* 62 F.3d at 1251.

Furthermore, the government's original tax claim in this case was based on Debtor's asserted failure to account for employee withholdings, and therefore the lien arising from that claim is beyond the reach of § 726(a)(4) of the Bankruptcy Code. An IRS tax lien securing a claim arising out of an assessment pursuant to § 6672 of the Tax Code is not a claim of the kind provided for by § 726(a)(4).

Clearly, a "penalty" assessment against a "responsible person" under Tax Code § 6672 is distinguishable from the claim targeted by Bankruptcy Code § 726(a)(4). The penalty under § 6672 is based upon "the total amount of tax evaded, or not collected, or not accounted for and paid over." *See Monday v. United States,* 421 F.2d 1210 (7th Cir. 1970). In contrast, a penalty under § 726(a)(4) is limited to the extent it is not compensatory for actual pecuniary losses.

When Congress referred to the "penalty" under § 726(a)(4), it was not referring to assessment under 26 U.S.C. § 6672. As Representative Edwards stated in introducing the measure in 1978,

> For purposes of the above priority rules, the House amendment adopts the provision of the Senate bill that any tax liability which, under otherwise applicable tax law, is collectable in the form of a "penalty" is to be treated in the same manner as a tax liability. In bankruptcy terminology, such tax liabilities are referred to as pecuniary loss penalties. Thus, any tax liability which under the Internal Revenue Code or State or local tax law is payable as a "penalty" in addition to the liability of a responsible person under section 6672 of the Internal Revenue Code, will be entitled to the priority which the liability would receive if it were expressly labeled as a "tax" under the applicable tax law. However, a tax penalty which is punitive in nature is given subordinated treatment under section 726(a)(4).

124 Cong. Rec. H10089, 1112–13, 95th Cong., 2nd Sess. (1978), reprinted in 1978 U.S.C.C.A.N. 6436, 6568 (*quoted* in *In re Palmer,* 53 B.R. 545, 548 (Bankr.N.D.Tex. 1985)).

Thus, the Debtor may not apply his exemptions to protect the Surplus Fund subject to the government lien.

*Debtor Cannot Apply Any of His Exemptions Against Surplus Fund Which Became Government Property Pre–Petition and Its Rights Thereto Are Res Judicata.*

■ Finally, the Debtor relinquished any rights in the Surplus Fund through his agreement to the order dividing all proceeds between Lutvi Dalip's wife and the IRS. That agreed order must be given *res judicata* effect here. He cannot assert exemption rights in property given up by him before the bankruptcy was filed.

As provided in 735 ILCS 5/12–901 (formerly codified as Ill.Rev.Stat. ch. 110, ¶ 12–901 (1991)):

> Every individual is entitled to an estate of homestead to the extent in value of $7,500 in the farm or lot of land and buildings thereon, a condominium or in personal property, owned or rightly possessed by lease or otherwise and occupied by him or her as a residence, or in a cooperative that owns property that the individual uses as a residence; and such homestead, and all right and title therein, is exempt from attachment, judgment, levy, or judgment sale for the payment of his or her debts or other purposes from the laws of conveyance, descent and legacy, except as hereinafter provided or as provided in 755 ILCS 5/20–6.

Couples like the Dalips who jointly own such property are usually entitled to a cumulative $15,000 exemption. *First National Bank of Moline v. Mohr,* 162 Ill.App.3d 584, 114 Ill.Dec. 85, 515 N.E.2d 1356 (3d Dist. 1987).

A debtor's right to exemptions is determined as of the date the bankruptcy petition is filed. *Huizar v. Bank of Robstown (In re Huizar),* 71 B.R. 826, 829 (Bankr.W.D.Tex. 1987). Thus, Debtor's claim of homestead interest in real property must have been viable when he filed. In *Hoffman v. Central Pennsylvania National Bank,* 96 B.R. 46 (W.D.Penn.1988), the debtor was denied a

homestead exemption under section 522(d) of the Code because the interest sought to be avoided did not involve an interest in real property; instead, that interest involved partial transfer of funds that came from sale of a home to satisfy a judicial lien. In *Hoffman,* the court reasoned that the debtor was not trying to recover the house and he had not alleged that the property involved there (i.e., the money from the sale) was being used as a residence. *Id.* at 49. Similarly, here Mr. Dalip is trying to avoid a partial transfer of funds from sale of the house to satisfy a tax lien. Here, as in *Hoffman,* Debtor is not trying to recover his former home nor does he allege that the foreclosure sale occurred after his bankruptcy was filed. Property is not exempted under the homestead exemption where debtor's property was conveyed to a third party prior to filing of the bankruptcy petition. *In re Huizar,* 71 B.R. at 830. Therefore, the homestead exemption is not available to Lutvi Dalip because the sale of his home occurred prior to the bankruptcy filing and the home was not then, and is not now, being used by Debtor as a residence.

Federal courts are required to give state court judgments the same full faith and credit as they have by law or usage in the courts of such state. 28 U.S.C. § 1738; Second Restatement of Judgments, § 25 (1982); *Schlangen v. Resolution Trust Corp.,* 934 F.2d 143, 145 (7th Cir.1991). Because the agreed order for the equal split of the Surplus Fund was entered with the same Illinois court that confirmed the judicial sale, following foreclosure judgment, it is necessary to determine the *res judicata* effect of an Illinois state court judgment on this bankruptcy proceeding. Illinois rules as to *res judicata* apply. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985); *Levin v. Attorney Registration and Disciplinary Commission,* 1995 WL 135565, *4 (N.D.Ill. 1995).

The basic principles of *res judicata* in Illinois are well-established. To constitute *res judicata,* a decision must involve (1) identity of parties or their privies in the two suits; (2) identity of causes of action in the prior and current suit; and (3) a final judg-

ment on the merits in the prior suit. *Schlangen,* 934 F.2d at 146; *Rockford Mut. Ins. Co. v. Amerisure Ins. Co.,* 925 F.2d 193, 195 (7th Cir.1991). The bar of res judicata extends not only to questions actually decided, but also to all grounds of recovery and defenses which might have been presented in the prior litigation between the parties. *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1234 (7th Cir.1986); *Torres v. Rebarchak,* 814 F.2d 1219, 1222 (7th Cir.1987). The issue here is whether Illinois would give the state court consent order preclusive effect against claims asserted in the bankruptcy because debtor had a full and fair opportunity to litigate his claim. *Welch v. Johnson,* 907 F.2d 714, 719 (7th Cir.1990).

In Illinois an agreed order entered by the state court is a final judgement on the merits as to matters settled by that order. A judgement is final for purposes of *res judicata* if it terminates litigation on the merits so that the only issue remaining is proceeding with its execution. *Catlett v. Novak,* 116 Ill.2d 63, 68, 106 Ill.Dec. 786, 506 N.E.2d 586 (1987). It is true that an agreed order neither constitutes a judicial determination of the rights of the parties nor represents judgement of the court, *Ad–Ex, Inc. v. City of Chicago,* 207 Ill.App.3d 163, 177, 152 Ill.Dec. 136, 565 N.E.2d 669 (1st Dist.1990), but is a recordation of the private agreement of the parties. *Kandalepas v. Economou,* 191 Ill.App.3d 51, 53, 138 Ill.Dec. 329, 547 N.E.2d 496 (1st Dist.1989). Nonetheless, in Illinois, an order entered by consent of the parties operates to the same extent for purposes of *res judicata* as a judgment entered after contest, because it is conclusive with respect to the matters settled by the order, judgment, or decree. *Elliott v. LRSL Enterprises, Inc.,* 226 Ill.App.3d 724, 727, 168 Ill. Dec. 674, 676, 589 N.E.2d 1074, 1076 (2d Dist.1992), *citing Barth v. Reagan,* 146 Ill. App.3d 1058, 1064, 100 Ill.Dec. 541, 497 N.E.2d 519 (2d Dist.1986). "Any other interpretation would effectually nullify all settlements because the same claim would be subject to the possibility of future litigation and double recovery." *Elliott v. LRSL Enterprises, Inc.,* 226 Ill.App.3d 724, 727, 168 Ill. Dec. 674, 676, 589 N.E.2d 1074, 1076 (2d

Dist.1992). Thus, the agreed order splitting the surplus proceeds from sale of the property equally among the parties had the effect of a final judgement on the merits for purposes of *res judicata.*

 Although estoppel and waiver generally do not apply to losing homestead rights, principles of *res judicata* and collateral estoppel do apply. *People v. One Residence Located at 1403 East Parham Street,* 251 Ill.App.3d 198, 190 Ill.Dec. 573, 576–77, 621 N.E.2d 1026, 1029–30 (5th Dist.1993); *Ferriman v. Gillespie,* 250 Ill. 369, 95 N.E. 495, 496 (1911). Debtor sought to recover his share of the Surplus Fund, then gave it up through the Agreed Order. Where a litigant invokes a court's jurisdiction with respect to his claim, he is bound by an adverse ruling that he agrees to.

A judgment is final for res judicata purposes if it conclusively disposes of issues before the rendering court. *New Haven Inclusion Cases,* 399 U.S. 392, 90 S.Ct. 2054, 26 L.Ed.2d 691 (1970). Such judgment must also be on the merits. A judgment is considered to be on the merits if it is a disposition based on validity of a party's claim rather than on technical procedural grounds. *Saylor v. Lindsley,* 391 F.2d 965, 968 (2d Cir. 1968). A consent written agreed order or judgment, like the one involved here, normally is given full *res judicata* effect in the absence of a stipulation indicating that it does not cover the entire claim. *Martino v. McDonald's Sys., Inc.,* 598 F.2d 1079 (7th Cir.1979). In this case, no such stipulation was made, nor could it be since Debtor clearly gave up all his rights in the entire portion of the Surplus Fund that he sought to recover.

Therefore, on the basis of *res judicata,* the agreed state court rulings must be accorded a preclusive effect. *Old Orchard Bank & Trust Co. v. Levin,* 124 Ill.App.3d 443, 79 Ill.Dec. 819, 464 N.E.2d 723 (1st Dist.1984). Dalip cannot relitigate in this Court issues already determined by the state court including his entitlement to homestead and wild card exemptions. There is no contention that the state court proceeding, where he was represented by counsel, failed to provide him with a full and fair opportunity to litigate, nor is there any contention that the state court proceeding and agreed order were not final. Since the state court of competent jurisdiction entered a final ruling on the merits through the Agreed Order, Dalip is bound by *res judicata* both as to matters decided and matters as to state law exemptions which could have been raised by him.

For the foregoing reasons, there is no basis for denying enforcement of the Agreed Order on grounds that it improperly impairs a homestead or wild card exemption in bankruptcy.

## CONCLUSION

Accordingly, there is more than a pleading difficulty here. While Debtor might be able to plead legal duress if given another chance, his claim would still fail for reasons stated above. Therefore, his motion will now be denied and dismissed with prejudice.